## Inmon et al. v. Chesapeake & O. Ry. Co.

Jan. 16, 1942.

Edward L. Allen for appellants.

Lee Wright Browning for appellee.

OPINION OF THE COURT BY JUDGE FULTON—Affirming.

This appeal is from a judgment entered on a directed verdict for the appellee at the conclusion of all the testimony in an action by appellant against appellee for damages to property owned by them on account of flooding of the property, due, as alleged, to discharge of water on the property by a concrete culvert under appellee's railroad tracks immediately in front of the property.

The facts disclosed by the evidence, about which there is little conflict except in one particular (cost of providing adequate drainage), are substantially as follows. Garrett, a coal mining town, is situated on appellee's Elkhorn and Beaver Valley subdivision, which runs in an eastwardly and westwardly direction. Appellants' property consists of five dwelling houses and outhouses in the Martin Addition, outside of the corporate limits of Garrett, and is situated on the south side of the railroad between it and Beaver Creek. The houses front on the railroad and are separated from the tracks by a street or passway, eight to ten feet in width; on the opposite, or north, side of the railroad, and parallel therewith is State Highway No. 80 and north of the highway is a mountain side. The railroad was built in 1913. Shortly thereafter the Elkhorn Coal Corporation and the Standard Elkhorn Collieries began coal operations, a mining camp of the Elkhorn Coal Corporation being located north of the railroad and the highway. The land on the south side, including appellants' property, was low bottom land owned by Standard Elkhorn Collieries, which, in 1922, located a mining camp thereon and constructed the houses now owned by appellants as well as the other houses in this subdivision.

The present State Highway No. 80 was constructed in 1933 on the approximate location of an old county road. In the construction of this highway two culverts were built beneath it, one slightly east of appellants' property and the other a short distance west of it. Through these two culverts surface water from the mountain side flowed beneath the highway into an open ditch or drain between the railroad and the highway. At about the same time as the construction of the highway culverts the appellee constructed a concrete culvert beneath its track at a point opposite appellants' property in order to carry away the water thrown on its right-of-way by the highway culverts. This culvert connected with a wooden box drain beneath the street or passway in front of appellants' property and water passing through the culvert and box drain was carried away through an open ditch to Beaver Creek, approximately 400 feet south of the railroad. The wooden box drain and open ditch were constructed by Standard Elkhorn Collieries, then owner of the property, which included the property now owned by appellants and in doing this it obtained consent of the owner of property, over which the ditch ran, located between its property and Beaver Creek. Prior to the construction of the highway, the water running down from the mountain side accumulated in an open drain or pond and flowed westwardly to Estep Branch approximately 800 feet west of the culvert. The box drain and open ditch constructed by the coal company was sufficient for proper drainage of the water as long as the coal company owned the property and kept the ditch open. Later, however, the lots owned by the coal company were sold to various private individuals, including appellants, who bought their property in 1937. These private owners permitted the artificial open ditches conveying the water and refuse to fill up so that, in wet seasons, water rises until it reaches the foundations and floors of appellants' property. According to appellants' proof the floors and foundations of their property were in good condition when they purchased the property but have been seriously damaged since then by the standing of water on the lots.

Considerable proof was introduced as to what it would cost the railroad company to provide proper drainage for the water discharged through the culvert by constructing a concrete or tile drain along its right-of-way to Estep Branch, a distance of about 800 feet, or to

construct a sewer along Broadway street of the Martin subdivision running in a southerly direction from the railroad right-of-way to Beaver Creek, a distance of approximately 400 feet. Here occurred the only serious conflict in the evidence. Evidence for appellants was to the effect that the cost of such construction would be from $1,100 to $1,500, while according to appellee's evidence such cost would be between $2,700 to $3,200.

The trial court, in directing the verdict for appellee, was of the opinion that the drainage system described was of a permanent nature and that appellants, having purchased the property with full knowledge thereof, could not reasonably conclude that they had a right to expect the appellee to expend from $1,000 to $3,000 to divert the water from their property.

It is conceded by appellants that if the culvert under appellee's railroad track is a permanent structure the appellants, who purchased the property with knowledge of the existence of the drainage system, could not recover for injury thereafter occurring to the property. This concession is in line with many cases in this court holding that a purchaser of land with knowledge of the existence of a permanent structure causing damage to the land, may not recover for recurrent injury to the land by reason thereof, upon the ground that the purchaser is presumed to have obtained the benefit of the reduced value of the property resulting from the existence of the structure causing the damage. See Thomas v. Louisville & N. R. Co., 264 Ky. 457, 94 S. W. (2d) 996, and cases therein cited. It is insisted by appellants, however, that since their evidence established that the appellee could have remedied the situation by providing proper drainage at an expense of from $1,100 to $1,500, it was incumbent on the trial court to submit to the jury the question whether the structure causing the damage was temporary or permanent.

Rules applicable to the recovery of damages in cases of this character were aptly laid down in Louisville & N. R. Co. v. Bennett, 196 Ky. 679, 246 S. W. 121, 122, and have been followed in many succeeding cases in this court. Those rules are:

"(1) That a single recovery must be had for all damages resulting from a permanent structure properly built; (2) that for a structure unlawfully or negli-

gently built, though intended to be permanent, recurring recoveries for such improper or negligent construction may be had as the injuries occur; (3) that for a temporary structure recurring recoveries may be had as the injuries occur; and (4) that whether the construction was negligent is a question for the jury under the evidence, if the same be conflicting.''

In Dugan v. Long, 234 Ky. 511, 28 S. W. (2d) 765, 766, a permanent structure of this character was defined as ''one which may not be readily remedied, removed, or abated at a reasonable expense, or one of a durable character evidently intended to last indefinitely, costing as much to alter as to build it in the first instance.''

In the light of these rules it seems clear there is no liability on appellee's part for recurring damage. The culvert under appellee's right-of-way is a part of a permanent drainage system for the surface waters flowing from the mountain side to Beaver Creek and is but a single link in the drainage system originally constructed jointly by the county or state, the appellee and appellant's predecessor in title, Standard Elkhorn Collieries, clearly contemplated by the parties as a permanent one. The culvert cannot be separated from that which was begun by the county or state on the north side of the railroad track, joined in by appellee at its railroad track, and from thence completed by the coal company to Beaver Creek. To hold that appellee is liable to the present owners of the property for recurring damages, or that to avoid such liability it must construct a new drainage system, would be to place upon it the burden of remedying a situation which the county or state created and in which the coal company, appellants' predecessor in title, not only acquiesced but actively participated.

Possibly the appellee and appellants' predecessor in title had a right of action against the county on account of the construction of the two highway culverts and it may be that the coal company would have had a right of action against appellee for damage resulting from the construction of the culvert beneath its railroad track. However, neither the appellee nor appellants' predecessor in title chose to assert such right but acquiesced in the action of the authorities constructing the highway and undertook to provide a complete and permanent system of drainage sufficient to carry the water away from

appellee's property and from the property of the coal company. This drainage system continued to operate satisfactorily and it was only as a result of the action of property owners, who had purchased from the coal company, permitting the drainage ditch to fill up that water was caused to stand on the property and damage it. The parties themselves treated this drainage system as a permanent one and, having done so, neither they nor their successors in title may now assert that the structure is temporary or that it was improperly constructed. Dugan v. Long, supra; Hutchinson v. Copenhaver, 193 Ky. 301, 235 S. W. 761. As said by this court in Young v. Illinois Cent. R. Co., 220 Ky. 322, 295 S. W. 156, 158, where a somewhat similar situation was under consideration:

> "There is nothing in this record showing that appellants had any expectation that appellee would maintain the ditch so it would drain the land at the time they purchased it, and there is nothing in the record upon which they might have based any such expectation."

The same may be said here. There is nothing in the record showing that the coal company had any expectation that appellee would maintain the open ditch or provide other drainage nor is there anything showing any facts upon which the appellants were entitled to base any such expectation.

Judgment affirmed.