A. B. BRASWELL, JR., AND WIFE, PEGGY S. BRASWELL, PETITIONERS v. STATE HIGHWAY AND PUBLIC WORKS COMMISSION, RESPONDENT.

(Filed 12 June, 1959.)

1. **Water and Water Courses § 2c—**

   The right to recover for the wrongful diversion of the waters of a stream is not dependent upon negligence.

2. **Eminent Domain § 1—**

   Our Constitution guarantees payment of compensation for property taken by sovereign authority. Art. I, s. 17.

3. **Water and Water Courses § 2c—**

   The right of a lower proprietor to have water drain according to terrain and natural flow is a property right in the nature of an easement appurtenant.

4. **Same: Eminent Domain § 2—**

   Diversion of the natural flow and drainage of streams and surface waters incident to the construction of a highway, resulting in the periodic flooding of the lands of a proprietor, is a "taking" of property for which just compensation must be paid.

5. **Eminent Domain § 9—**

   Where the evidence discloses that the Highway Commission, incident to the construction of a new highway, diverted the flow of a stream and altered the drainage of the land, conflicting evidence as to whether such diversion resulted in the periodic flooding of petitioners' land or whether such flooding was the result of excessive rains, etc. takes the issue to the jury.

6. **Water and Water Courses § 2c—**

   The charge of the Court to the effect that the upper proprietor may increase or accelerate the natural flow of water but cannot divert it and cause it to flow upon the lands of the lower proprietor in a different manner or in a different place, and that the damages recoverable by the lower proprietor are limited to those proximately caused by such wrongful diversion, *held* not prejudicial.

APPEAL by respondent from *Craven, S. J.,* December 1958 Special Civil Term of MECKLENBURG.

Petitioners seek compensation for the alleged diversion of water resulting in damage to their home by the construction of U. S. High-

way 29 bypassing Charlotte. Commissioners were appointed by the clerk. They assessed damages. Judgment was entered awarding damages in conformity with the report. Respondent appealed to the Superior Court in term. There an amended petition and answer were filed. The court submitted the controversy to a jury on these issues:

"1. Are the petitioners the owners of house and lots described in the amended petition? Answer:............

"2. Did respondent take an easement of flooding on or across the property of petitioners, as alleged in the amended petition? Answer: ............

"3. What sum, if any, are petitioners entitled to recover of respondent as just compensation for such easement? Answer:..............."

The jury answered the first two issues in the affirmative and fixed the amount of petitioners' damage. Thereupon the court entered judgment declaring respondent the owner of an easement entitling it to flood petitioners' property as there specifically described. The judgment also adjudged defendant liable for the amount fixed by the jury as compensation for the easement. Respondent appealed.

*Sedberry Sanders & Walker for petitioner appellees.*

*Attorney General Seawell and Assistant Attorney General Wooten, Harrison Lewis, and McDougle, Ervin, Horack & Snepp for respondent, appellant.*

RODMAN, J.   Respondent, by demurrer filed here and by exceptions duly noted in the record, presents for determination these questions: (1) Does the amended petition state a cause of action; (2) if so, does the evidence require submission of issues to the jury; and (3) was prejudicial error committed during the trial entitling respondent to a *venire de novo?*

An answer to the first question is not only essential, but the reasons which are the basis for the answer will materially simplify the solution of the remaining questions. The answer is, of course, to be found by looking at the facts alleged. For that purpose we make this summary of the amended petition:

(1) Petitioners own and occupy as their home lot 25 and a part of lot 24, Block 6, in Beechwood Acres, a residential subdivision adjacent to Charlotte. Their dwelling was constructed and occupied prior to 1956. (2) In the spring of 1956 respondent began construction of a road through Beechwood Acres to form a bypass around Charlotte for U. S. Highway 29.   The right of way for the bypass is 260 feet wide and lies in a general east-west direction. (3) Prior to road con-

struction Beechwood Acres was drained by two branches which united to form a creek. Branch 1 flowed in a southerly direction, Branch 2 in an easterly direction. These branches united at the edge of the fill constructed by respondent. The creek flowed in a southeasterly direction under a bridge at Beechwood Road to and through a culvert under the P & N Railroad. This bypass crosses over P & N Railroad north of the bed of the creek. (4) The divide for waters in Beechwood Acres, and land to the west of Beechwood Acres was to the east of Tuckaseegee Road. This watershed was cut by respondent and water from another drainage basin diverted into Branch 2, which branch was enlarged, relocated, straightened, and in part paved. The petition specifically alleges: "That respondent has caused a diversion of water in the construction of said new highway in certain particulars . . ." This is followed with six detailed and specific allegations of diversion. (5) Petitioners' property fronts on Glenwood Road and runs back to the creek. It is situate about 250 feet from the bypass. (6) The diversion of the waters has caused the creek to overflow its banks and flood petitioners' property. It will continue subject to the flooding in periods of heavy rain. The diversion and resulting damage constituted a taking entitling petitioners to compensation.

The demurrer admits respondent in the construction of the bypass has, as alleged, diverted water resulting in damage to petitioners.

Counsel for respondents recognize the general rule that liability exists for damage resulting from a diversion of water. They quote from *Hocutt v. R. R.*, 124 N.C. 214: "It is now well settled that neither a corporation nor an individual can divert water from its natural course so as to damage another. They may increase and accelerate, but not divert." They then frankly say: "It is admitted that if the 'diversion equals liability' rule is applicable to the State Highway Commission, then the amended petition states a cause of action."

Their position is that liability cannot be imposed on a governmental agency for damages resulting from road construction unless there be negligence in the design or manner in which the work is done, and since the petition does not allege negligence in planning the road nor in the actual construction, the petition fails to state a cause of action. As authority for their position they cite *Yowmans v. Hendersonville*, 175 N.C. 574, 96 S.E. 45, and *Eller v. Greensboro*, 190 N.C. 715, 130 S.E. 851.

It is true that language is to be found in those cases which may seem to support respondent's position, but when the factual situation dealt with in those cases is understood, it is readily apparent that

the conclusions reached in those cases have no application to the factual situation here presented.

First it may be noted that those cases dealt with the improvement of an existing road. Here there was no road prior to 1956. But more important, those cases dealt with the duties and obligations of upper and lower proprietors with respect to the disposition of waters falling within the watershed.

That negligence need not be alleged to create liability for a diversion is, we think, apparent from what is said in the *Yowmans* case, *supra:* "In further consideration of the facts in evidence, it is very generally held here and elsewhere that while municipal authorities may pave and grade their streets and are not ordinarily liable for an increase of surface water naturally falling on the lands of a private owner, where the work is properly done, they are not allowed, from this or other cause, to concentrate and gather such waters into artificial drains and throw them on the lands of an individual owner in such manner and volume as to cause substantial injury to the same and without making adequate provision for its proper outflow, unless compensation is made, and for breach of duty in this respect an action will lie. . . . And, under appropriate instructions applied to the facts and principles of law heretofore stated, the question of defendant's responsibility should be made to depend chiefly on whether, having gathered and concentrated the surface water into artificial drains or sewers, it turned same on plaintiff's property in such manner and such volume that the injuries complained of were likely to result, and did result, under and from the conditions presented. If so, the issue should be answered 'Yes.' "

Our Constitution, Art. I, s. 17, guarantees payment of compensation for property taken by sovereign authority. *Eller v. Board of Education,* 242 N.C. 584, 89 S.E. 2d 144; *Sale v. Highway Com.,* 242 N.C. 612, 89 S.E. 2d 290; *Raleigh v. Edwards,* 235 N.C. 671, 71 S.E. 2d 396; *McKinney v. Deneen,* 231 N.C. 540, 58 S.E. 2d 107.

If the right to have water flow in the direction provided by nature is a property right, it follows that the owner of property is protected by the constitutional guarantee and must be compensated when he has been damaged by the destruction of that right.

Repeated decisions of this Court have clearly indicated if not expressly declared that the benefits accruing to property by adhering to nature and permitting water to drain according to the terrain and natural flow is a property right. *Eller v. Board of Education, supra; Johnson v. Winston-Salem,* 239 N.C. 697, 81 S.E. 2d 153;

*Phillips v. Chesson,* 231 N.C. 566, 58 S.E. 2d 343; *McKinney v. Deneen, supra; Mizzell v. McGowan,* 120 N. C. 134.

With reference to a similar situation, it is said in *Beach v. R. R.,* 120 N.C. 498: "The interest and convenience of the public will not permit the abatement of the nuisance, and the law does not contemplate an indefinite succession of suits. Therefore, a lump sum is recoverable, at the demand of either party, in consideration of which the defendant acquires the *right* to discharge its ditches upon plaintiff's land. *This is nothing more than an easement appurtenant to defendant's right of way.*" (Emphasis supplied.)

Easements are interests in land. *Reed v. Elmore,* 246 N.C. 221, 98 S.E. 2d 360; *Borders v. Yarbrough,* 237 N.C. 540, 75 S.E. 2d 541; *Sanders v. Smithfield,* 221 N.C. 166, 19 S.E. 2d 630; *Davis v. Robinson,* 189 N.C. 589, 127 S.E. 697.

*Chief Justice Hughes,* speaking with reference to a similar factual situation, said, in *Jacobs v. U. S.,* 290 U.S. 13, 78 L. Ed. 142: "A servitude was created by reason of intermittent overflows which impaired the use of the lands for agricultural purposes. 45 F. (2d) p. 37, 63 F. (2d) p. 327. There was thus a partial taking of the lands for which the Government was bound to make compensation under the Fifth Amendment."

The rule as stated has been uniformly applied in other jurisdictions. As illustrative, see *Levene v. City of Salem,* 229 P. 2d 255 (Ore.); *City of Portsmouth v. Weiss,* 133 S.E. 781 (Va.); *Rau v. Wilden Acres,* 103 A. 2d 422 (Pa.); *Armbruster v. Stanton-Pilger Drainage District,* 86 N.W. 2d 56 (Neb.); *Panama City v. York,* 26 So. 2d 184 (Fla.); *White v. City of Santa Monica,* 299 P. 819 (Cal.); *O'Brien v. City of St. Paul,* 25 Minn. 331; *Elser v. Village of Gross Point,* 79 N.E. 27 (Ill.); *Nevins v. City of Peoria,* 41 Ill. 502; 38 Am. Jur. 352, 63 C.J.S. 271-3.

The petition states a cause of action. The demurrer is overruled.

That respondent cut through the ridge near Tuckaseegee Road and thereby brought into Beechwood Acres and the creek forming a boundary of petitioners' property water which had never flowed in that direction prior to the construction of the road is not controverted. It is established by witnesses for both petitioners and respondent.

Witnesses for respondent fixed the area from which the water is so diverted as approximating three acres and the quantity of water so diverted as small and insufficient to cause damage. Petitioners do not concede the accuracy of acreage or quantity diverted as asserted by respondent's witnesses. Their testimony is fairly subject to the

interpretation that the water admittedly diverted was largely responsible for the damage.

In addition to the admitted diversion from the west side there is evidence that water falling on the northern portion of the development drained eastwardly down Beachwood Road and into the creek below petitioners' home. The highway is on a fill 30-40 feet high where it passes petitioners' home. This fill divided what was Beechwood Road into two distinct parts, preventing the water from following its natural flow. To take care of the water from the north formerly flowing along Beechwood Road, respondent cut a ditch on the north side of its embankment and into Branch 1 above petitioners' home. Petitioners claim this diversion materially added to their damage.

Sharp disagreement exists with respect to the situation where the bypass crosses by overpass the P & N Railroad. Respondent's evidence tends to establish its work drained water from some 30 acres away from Beechwood Acres and petitioners' property and as a result petitioners are less likely to suffer from floods than they would if the road had not been built.

Petitioners testified their property had never been flooded prior to 1956 when the construction work was started, although the creek had several times run bank full. Between the completion of the fill and the trial in December 1958 petitioners' property had been flooded nineteen times, the water, on one occasion, rising to a height of four feet.

Respondent countered by showing an abnormal number of heavy rains during that period. Between 1 August 1957 and 1 August 1958 the rainfall in Charlotte exceeded that for the preceding twelve months by 9.21 inches and exceeded the average for the preceding five years by 26.9%.

Petitioners' testimony, if true, established a diversion resulting in damage. What the truth was upon the conflicting testimony was a question for the jury.

The motion to nonsuit was properly overruled.

In the charge the court stated: ". . . the theory of this case as pleaded in petitioners' amended petition is that of diversion." He followed that statement by a correct definition of diversion. Then he told the jury: "I charge you that the owner or occupant of the higher lands may increase the natural flow of water and may accelerate it but cannot divert the water and cause it to flow upon the lands of the lower owner in a different manner or in a different place from which it would naturally go." The quoted portion is assigned as error. It is a correct statement of law applicable to the facts of this case.

*Phillips v. Chesson, supra; Cardwell v. R. R.,* 171 N.C. 365, 88 S.E. 495; *Brown v. R. R.,* 165 N.C. 392, 81 S.E. 450; *Hooker v. R. R.,* 156 N.C. 155, 72 S.E 210; *Barcliff v. R. R.,* 168 N.C. 268, 84 S.E. 290; *Rice v. R. R.,* 130 N.C. 375; *Hocutt v. R.R., supra.*

The court further charged that the jury, to answer the second issue in the affirmative, would have to find not only the diversion as claimed but would have to find that such diversion was the proximate cause of petitioners' damage, and only to the extent the flooding was proximately caused by respondent would there be a taking for which it could be required to pay compensation.

The court's definition of taking requiring payment of compensation is taken from 18 Am. Jur. 756 and is quoted as correctly stating the law in *Penn v. Coastal Corp.,* 231 N.C. 481, 57 S.E. 2d 817.

Each of the exceptions to the charge have been examined; but when considered as a whole and not in disconnected clauses and sentences, we have not found error of which respondent can fairly complain.

No Error.