## JETHRO MIDGETT, JR. v.
## NORTH CAROLINA STATE HIGHWAY COMMISSION.

(Filed 9 October 1963.)

**1. Waters and Water Courses § 1—**

Lower lying parcels of land are servient to those on higher levels and the owner of each is required to receive and allow passage of the natural flow of surface water from the higher land and may not obstruct or interrupt the flow of surface water to the detriment or injury of the upper estates. The "common-enemy doctrine" has not been recognized in this State.

**2. Same—**

The principles which apply to surface waters from inland streams apply with equal force to overflow water from the ocean.

**3. Same; Eminent Domain § 2—**

The owner of land may recover damages as for a "taking" for a nuisance resulting from the construction of a highway at an elevation which prevents waters from the ocean periodically coming over the dunes in time of storm from being dissipated into the sound, and which thus diverts surface water onto the land to its damage. If such flooding is so extraordinary and unusual as to constitute an "Act of God" in the legal sense, no recovery can be had, but when the matter is controverted the question is ordinarily a matter for the jury.

**4. Same—**

In order to constitute a nuisance amounting to a "taking" of private property, the structure creating the nuisance must be permanent in nature, which is one which may not be readily altered at reasonable expense so as to obviate its harmful effects. But even if a structure be "permanent", its removal after damage does not abate the action, although its removal prior to the infliction of damage precludes action.

**5. Eminent Domain § 11—**

Allegations that defendant State Highway Commission constructed a highway at an elevation which prevented waters of the ocean flowing over the dunes in time of storm from being dissipated toward the sound, and thus caused such waters to inundate plaintiff's property, resulting in a depreciation in its value, *held* to state a cause of action to recover for the depreciation in value of the realty as for a "taking."

**6. Eminent Domain §§ 1, 11—**

Allegations that the State Highway Commission constructed a highway at an elevation which caused waters from the ocean flowing over the dunes in a storm to inundate plaintiff's land and damage personal property stored in plaintiff's buildings on the land *held* not to state a cause of action for damage to the personalty, since no "taking" of personalty can be predicated on the theory of permanent nuisance, and, further, the Highway Commission has no authority to appropriate personal property for public use. G.S. 136-19.

7. Same—

    The requirement that compensation be paid for the taking of land or an interest therein under the power of eminent domain is self-executing, and therefore when no statute affords an adequate remedy under the particular fact situation, plaintiff may maintain an action at common law.

8. Same—

    The owner of land may maintain an action at common law to recover for the depreciation in the value of land resulting from a nuisance created by the construction of a highway at an elevation which periodically diverts storm waters of the ocean across the land, there being no undertaking by defendant to condemn plaintiff's property under G.S. 115-85 or G.S. 40-12 et seq., or otherwise, and if G.S. 136-19 were applicable in such instance, plaintiff's right of action might be barred before it accrued.

APPEAL by plaintiff from *Peel, J.,* May 1963 Session of DARE.

Civil action to recover damages for property allegedly taken for public use as the direct result of the maintenance of a continuing nuisance.

The complaint, summarized in part and verbatim in part, contains the following allegations:

1. Plaintiff owns two lots in Nags Head Township, Dare County, situate on the west side of "Old State Highway #158," and on the lots are the following buildings: A two-story building used for business and as a dwelling, a storehouse, two cottages, a double garage, and a servants' quarters. On 7 March 1962 these buildings contained valuable personal property.

"2. That, sometime prior to the 22nd day of September 1959, defendant began the construction of a highway known as Highway #158 By-pass. As this construction proceeded, plaintiff noted that said highway, as being constructed, would constitute a dam which would prevent the waters of the ocean that, for many years, have come over the dunes in time of storm, from being dissipated toward the sound on the west side of the Outer Banks. That such dam constituted a continuing nuisance. Plaintiff protested and had protest made on his behalf against construction of said highway at the proposed elevation but such protests were in vain, the defendant proceeding to construct said new highway at a consistently high level above the surrounding terrain and just to the west of plaintiff's property, defendant completely ignoring protests of the plaintiff.

"3. That, on or about March 6-7, 1962, large quantities of water from the ocean came over the dune line, as it had many times in the past and, by reason of being blocked by the road, said ocean waters

inundated the property of the plaintiff depreciating the value of his property to his great loss in the amount of $13,600.00.

"4. That, by the construction of said road and resulting damage, plaintiff has been deprived of his property contrary to the provisions of Article I, Section 17, of the Constitution of North Carolina and the creation and maintenance of such highway has constituted such a nuisance as to substantially impair the value of plaintiff's property and such impairment is a taking, in a constitutional sense, within the principle of eminent domain.

"5. That the plaintiff has not been dispossessed of his property and defendant has not seized plaintiff's property but plaintiff's property has suffered an impairment of value by reason of the injury inflicted by the defendant, plaintiff by reason of the conduct of defendant having been deprived of his property without due process of law contrary to the Fifth Amendment to the Federal Constitution. The value of plaintiff's property has been effectively and appreciably impaired by the acts of the defendant in building said road or dam and such impairment constitutes a taking of plaintiff's land."

Defendant demurred. The demurrer was sustained and the action dismissed. Plaintiff appeals.

*Frank B. Aycock, Jr., and Robert B. Lowry for plaintiff.*
*Attorney General Bruton, Assistant Attorney General Lewis, Trial Attorney McDaniel and Gerald F. White for defendant.*

MOORE, J.  The grounds for demurrer asserted by defendant are in substance: (1) The facts alleged do not constitute a taking of private property for public use in the constitutional sense and do not amount to a legally cognizable injury to property, but present an occurrence of incidental or consequential damage from flood waters against which, under the "common-enemy doctrine," a land owner may protect himself by constructing walls, dams, barriers or other structures without exposing himself to liability for resulting injury to a neighboring landowner; and (2) if there was a taking, an action in superior court may not be maintained therefor, the proper procedure being a proceeding pursuant to G.S. 136-19 and G.S., Ch. 40, art. 2.

— I —

North Carolina has not recognized and does not apply the "common-enemy doctrine" with reference to surface waters. 59 A. L. R. 2d.,

Anno: Surface Waters — Drainage — Etc., s. 5, p. 429. We follow the "Civil-Law Rule," which recognizes a natural servitude of natural drainage as between adjoining lands, so that the lower owner must accept the surface water which naturally drains onto his land but, on the other hand, the upper owner cannot change the natural drainage so as to increase the natural burden. *ibid;* also *Johnson v. Winston-Salem,* 239 N. C. 697, 81 S. E. 2d 153.

The common-enemy doctrine is sometimes called the "old common-law rule." 1 Lewis: Eminent Domain, 3d. Ed., s. 110, p. 148; *Deason v. Southern Ry. Co.,* 140 S. E. 575 (S. C. 1927). In its strict application, it is that surface waters are a common enemy and, as an incident to the right of a landowner to use his property as he pleases, he has an unqualified right by operations on his own land to fend off surface waters as he sees fit without regard to the consequences to other landowners, who have the duty and right to protect themselves as best they can. This rule in its original rigor was applied in many states during the pioneer period of settlement when the country was largely undeveloped and sparsely settled. 59 A. L. R. 2d 423-425.

While there is not complete uniformity in the modern application of the common-enemy doctrine in the states which recognize it, each state being influenced by its own peculiar geographical and climatic conditions, it has been generally modified to the point that there is only a very fine line of distinction between it and the civil-law rule. The tendency of the "common-enemy doctrine" jurisdictions has been to develop strict definitions of terms and to apply these definitions to factual circumstances. We review here briefly some of the definitions and their effect in application. (a) A *stream* is water flowing in a defined channel, a stream in fact as distinguished from mere surface drainage. The size of the stream is immaterial, and the flow need not be continuous. 1 Lewis: Eminent Domain, 3d. Ed. s. 70, p. 68; *Mader v. Mettenbrink,* 65 N. W. 2d 334 (Ned. 1954); *Everett v. Davis,* 115 P. 2d 821 (Cal. 1941); *Kroeger v. Twin Buttes R. Co.,* 114 P. 553 (Ariz. 1911). (b) *Surface waters* are those which accumulate from rains, melting snows or springs, diffuse themselves over the surface of the ground and seek a lower level by force of gravity without flowing in a defined channel. 93 C. J. S., Waters, s. 112, p. 799; 1 Lewis: Eminent Domain, 3d. Ed., s. 110, p. 145; *Mader v. Mettenbrink, supra; Magle v. Moore,* 104 P. 2d 785 (Cal. 1940). They become streams after being gathered into natural channels. *Everett v. Davis, supra.* (c) *Flood waters* are waters above the highest line of the ordinary flood of a stream, or waters which spread out from overflowing streams. 1 Lewis (*supra*), s. 111, p. 150. It is generally held

that overflow or flood waters become *surface waters* when they leave the main current never to return and spread out over lower ground; but if they form a continuous body with the water flowing in the ordinary channel, the current widening to the full width of the water, or if they depart from the stream presently to return or to run into another stream or lake, they are to be regarded as part of the stream and not as surface waters. 93 C. J. S., 801. (d) The *flood plane* of a live stream is the adjacent lands overflowed in times of high water, from which flood waters return to the channel of the stream at a lower point. A flood plane is a part of the channel and waters flowing therein are flood waters. *Mader v. Mettenbrink, supra.* (e) Waters *flowing* in a flood plane, and flood and surface waters which have gathered into and are *flowing* in a natural channel, seasonal stream, natural depression, arroyo, gully, canyon, ditch, swale, draw or ravine, may not be obstructed or diverted in such a way as to injure an upper or lower landowner. *Everett v. Davis, supra; Kroeger v. Twin Buttes R. Co., supra; Magle v. Moore, supra; McGill v. Card-Adams Co.*, 47 N. W. 2d 912 (Neb. 1951); *McClure v. City of Red Wing*, 9 N. W. 767 (Minn. 1881). (f) The right of the owner of riparian land to the *natural flow* of water in a stream along the land is an incorporeal hereditament and is an incident to and is annexed to the land as a part and parcel of it. *Union Falls Power Co. v. Marinette County*, 298 N. W. 598, 134 A. L. R. 958 (Wis. 1941); *Van Etten v. City of New York*, 124 N. E. 201 (N. Y. 1919); *McGill v. Card-Adams Co. supra; McClure v. City of Red Wing, supra.* One may not back water on another in such a way as to create a *nuisance.* "A private nuisance is anything done to the hurt or annoyance of the lands, tenements or hereditaments of another." *Deason v. Southern Ry. Co., supra.* (g) Where the damage from the obstruction or diversion of water is of such nature as to amount to a nuisance, either public or private, the party injured has his remedy. *Dickinson v. New England Power Co.*, 153 N. E. 458 (Mass. 1926).

In a common-enemy doctrine jurisdiction it would probably be required that the complaint describe the topography of the *locus in quo* and the configuration of its surface in more detail than the challenged complaint contains. It might be required that the pleading allege that when the storm-driven sea waters broke over the dune line they gathered in a natural channel, ravine or depression and flowed as a stream westwardly toward the Sound until obstructed by the barrier formed by the elevated highway across the stream. On the other hand, in a jurisdiction requiring liberal construction of pleadings, as ours

does (Little v. Oil Corp., 249 N.C. 773, 776, 107 S.E. 2d 729), it might be maintained that the reasonable intendment of the pleadings as cast is that the waters flowed as a stream in a natural depression until impounded by the elevated highway and cast back upon plaintiff's land. It is common knowledge that waters naturally flow from higher to lower levels and tend to follow depressions and ravines.

We are not here concerned with the requirements of the common-enemy doctrine. We think the allegations of plaintiff's complaint, on this phase of the case, sufficient. The civil-law rule of this jurisdiction places less emphasis, than does the common-enemy doctrine, on the existence of well defined watercourses. Our rule embraces surface waters flowing and draining naturally from a higher to a lower level, and is stated thus: The law confers on the owner of each upper estate an easement or servitude in the lower estates for the drainage of surface water flowing in its natural course and manner without obstruction or interruption by the owners of the lower estates to the detriment or injury of the upper estates. Each of the lower parcels along the drainway is servient to those on higher levels in the sense that each is required to receive and allow passage of the natural flow of surface water from higher land. Johnson v. Winston-Salem, supra. See also: Braswell v. Highway Commission, 250 N.C. 508, 108 S.E. 2d 912; Young v. Asheville, 241 N.C. 618, 86 S.E. 2d 408; Bruton v. Light Co., 217 N.C. 1, 6 S.E. 2d 822; Jones v. Kramer, 133 N.C. 446, 45 S.E. 827.

No cases have come to our attention involving overflow waters from an ocean, sea or gulf, though we have made an exhaustive search. However, we discern no reason why the principles which apply to surface waters from inland streams should not with equal force apply to overflow waters from the ocean. The circumstances in the instant case are closely parallel to those in the cases involving the inundation of lands lying between a river and the levees constructed along the river for flood control. In some cases "where a levee is so constructed as to leave property between the levee and the river such property is deemed taken for levee purposes and must be paid for." 5 Nichols on Eminent Domain, 3d. Ed., S. 16.105, p. 77, and cases cited. "If the land was previously subject to inundation and after the construction of a levee was still subject to inundation it has been held that the owner was not entitled to recover for the damages caused thereby unless the inundation after the erection of the flood-control structures was greater in extent that it had previously been. In the latter case the recovery was limited to the difference between the total damages suffered after such construction and the damages which would have

been suffered in any event under normal conditions." *ibid,* pp. 81, 82. In a case such as the one at bar it is for the jury to determine whether there has been any damage to plaintiff's land by construction of the elevated highway in excess of that which would have been suffered had such highway not been constructed and, if so, the extent of such excess damage to the value of the land. However, this should be considered by the jury in conjunction with the general rule as to the measure of damages. *Clinard v. Kernersville,* 215 N.C. 745, 3 S.E. 2d 267.

Of course, the plaintiff is not entitled to maintain the action unless the facts alleged constitute a cognizable cause of action. An Act of God is not a sufficient predicate for an action for damages. The term "Act of God," in its legal sense, applies only to events in nature so extraordinary that the history of climatic variations and other conditions in the particular locality affords no reasonable warning of them. *Law v. Gulf States Steel Co.,* 156 S. 835 (Ala. 1934). The builder of an obstruction of surface waters is not bound to anticipate unprecedented storms or rainfalls, and is not liable for damages resulting from extraordinary storms and floods. *Bruton v. Light Co., supra; Taylor v. Chesapeake & O. R. Co.,* 100 S.E. 218, 7 A. L. R. 112 (W. Va. 1919). The owner of a barrier to surface water is not bound to provide against floods of which the usual course of nature affords no premonition. An extraordinary flood is one the coming of which is not to be anticipated from the natural course of nature. An ordinary flood is one, the repetition of which, although at uncertain intervals, can be anticipated. The fact that similar floods had occurred has been held to tend strongly to show that they are not so extraordinary and unusual that they might not have been reasonably expected to occur. 93 C. J. S., Waters, s. 20c, pp. 629-631; 1 Lewis: Eminent Domain, 3d. Ed., s. 113, p. 159. Where the matter is controverted, it is ordinarily a question for the jury and the burden is on plaintiff to show that the storm or flood was such as might reasonably have been anticipated and not an Act of God. Plaintiff alleges "That, on or about March 6-7, 1962, large quantities of water from the ocean came over the dune line, as it had many times in the past. . . ." In our opinion this is sufficient pleading of a flood which might have been anticipated.

Unless made so by statute, a governmental agency is not liable for the torts and wrongs of its employees and agents in the performance of its duties for the public benefit. *Eller v. Board of Education,* 242 N.C. 584, 89 S.E. 2d 144; *Sandlin v. Wilmington,* 185 N.C. 257, 116 S.E. 733; *Price v. Trustees,* 172 N.C. 84, 89 S.E. 1066. But if a govern-

mental agency maintains a nuisance, permanent in nature, causing damage to and diminution in the value of land, the nuisance is regarded and dealt with as an appropriation of property to the extent of the injury inflicted. *Eller v. Board of Education,. supra; Sandlin v. Wilmington, supra.* The right to have water flow in the direction provided by nature is a property right, and if such right of a landowner is materially interfered with so that his land is flooded by the manner in which a highway is constructed, it is a nuisance and a taking of property for public use for which compensation must be paid. *Braswell v. Highway Commission, supra;* 18 Am. Jur., Eminent Domain, s. 134, pp. 759, 760; 5 Nichols on Eminent Domain, 3d. Ed., s. 16.105, p. 78; 1 Lewis: Eminent Domain, 3d. Ed., ss. 109, 112, pp. 144, 151; *Manigault v. Springs,* 199 U.S. 473 (1905); *Jacobs v. United States,* 290 U.S. 13 (1933).

A nuisance maintained by a governmental agency impairing private property is a taking in the constitutional sense. *Raleigh v. Edwards,* 235 N.C. 671, 71 S.E. 2d 396. There need not be a seizure of the property or dispossession of the owners; it is a taking if the value is substantially impaired. *McKinney v. High Point,* 237 N.C. 66, 74 S.E. 2d 440. Permanent liability to intermittent, but inevitably recurring, overflows constitutes a taking. 18 Am. Jur., Eminent Domain, s. 134, pp. 759, 760. In order to create an enforceable liability against the government it is, at least, necessary that the overflow of water be such as was reasonably to have been anticipated by the government, to be the *direct* result of the structure established and maintained by the government, and constitute an actual permanent invasion of the land, or a right appurtenant thereto, amounting to an appropriation of and not merely an injury to the property. *Sanguinetti v. United States,* 264 U.S. 146 (1924). To constitute a permanent invasion of property rights and an impairment of the value thereof the obstruction or structure need not be permanent in fact, but it must be permanent in nature. A permanent structure is one which may not be readily altered at reasonable expense so as to remedy its harmful effect, or one of a durable character evidently intended to last indefinitely and costing practically as much to alter or remove as to build in the first place. *Inmon v. Chesapeake & O. Ry. Co.,* 158 S.W. 2d 147 (Ky. 1942). A segment of an improved highway is a structure of permanent nature. For examples of temporary obstructions see *Phillips v. Chesson,* 231 N.C. 566, 58 S.E. 2d 343; *Jones v. Kramer, supra.* The removal of the permanent structure during the pendency of the action and after direct damage has resulted from its construction and maintenance would not abate the action or prevent

the recovery of permanent damages. *Pernell v. Henderson,* 220 N.C. 79, 16 S.E. 2d 449. Once the cause of action has occurred by the infliction of damage to the property, the taking is a *fait accompli.* This is true because the government had the authority to invade the property rights of the landowner and to appropriate them to public use in the first instance, and the owner had no right to abate the nuisance. His only remedy is a single action for permanent damage to his property by reason of the taking. The government has an easement to continue the obstruction permanently, and whether it will continue to maintain the obstruction, alter it, or remove it altogether is optional with the government. *Braswell v. Highway Commission, supra; Phillips v. Chesson, supra; Bruton v. Light Co., supra; Greenville v. Highway Commission,* 196 N.C. 226, 145 S.E. 31; *Beach v. Railroad Co.,* 120 N.C. 498, 26 S.E. 703. However, there can be no recovery of damages before they occur, and if the obstruction is removed before the incidence of damage no action will lie. *Raleigh v. Edwards, supra.*

When the complaint is tested by application of the foregoing principles we are of the opinion, and so hold, that it states a legally cognizable cause of action for damages by reason of the appropriation of land for public use. The allegations of damage to personal property, however, are not sustained. Under the circumstances of this case and the permanent nuisance theory upon which it is maintained an action for the "taking" of movable personal property may not be upheld. There is no permanent nuisance with respect to such property and the damage thereto is regarded as incidental and not direct. Furthermore, the Highway Commission has no authority to appropriate personal property for public use. G.S. 136-19. "No allowance can be made for personal property, as distinguished from fixtures, located on the condemned premises. . . ." 29 C. J. S., Eminent Domain, s. 175a(1), p. 1045. Under the facts alleged, any injury to personal property is *damnum absque injuria.* See *Williams v. Highway Commission,* 252 N.C. 141, 113 S.E. 2d 263; *Pemberton v. Greensboro,* 208 N.C. 466, 181 S.E. 258.

— II —

We hold that the present action may be maintained and plaintiff is not restricted to the procedures set out in G.S. 136-19 and G.S., Ch. 40, art. 2.

Our Constitution, Article I, section 17, guarantees payment of compensation for property taken by sovereign authority. *Braswell v.*

*Highway Commission, supra; DeBruhl v. Highway Commission,* 247 N.C. 671, 102 S.E. 2d 229; *Ivester v. Winston-Salem,* 215 N.C. 1, 1 S.E. 2d 88. The statutory remedy for the recovery of damages to private property taken for public service is ordinarily exclusive, and when the statutory procedure is available, the owner, failing to pursue the statutory procedure, may not institute an action in superior court to recover his damages. *Harwood v. Concord,* 201 N.C. 781, 161 S.E. 534. But there is an exception to this rule. A constitutional prohibition against taking or damaging private property for public use without just compensation is self-executing, and neither requires any law for its enforcement nor is susceptible of impairment by legislation. And where the Constitution points out no remedy and no statute affords an adequate remedy under a particular fact situation, the common law will furnish the appropriate action for adequate redress of such grievance. *Sale v. Highway Commission,* 242 N.C. 612, 89 S.E. 2d 290.

The instant case is indistinguishable from *Eller v. Board of Education, supra,* with respect to facts controlling procedure. There the action, instituted originally in superior court, was held to be procedurally proper. The complaint alleged that defendant, in constructing a school building, pushed quantities of dirt, rock and stone into a branch which formed the boundary between the school lot and plaintiffs' land, thereby impeding the flow of the water in the branch and causing it to back up on plaintiffs' property, and that defendant's septic tank polluted and contaminated the waters of the branch, plaintiffs' spring, and the waters backed onto plaintiffs' premises, and their property was rendered uninhabitable. It was held, in substance, that the facts alleged constituted a nuisance amounting to an appropriation of plaintiffs' property and entitling them to compensation. With respect to the procedure involved this Court said: "Defendant further contends that plaintiffs' sole remedy is by petition before the clerk, under G.S. 40-12. Defendant has not undertaken to condemn plaintiffs' property under G.S. 115-85, under G.S. 40-12 *et seq.,* or otherwise; nor has it taken possession thereof for school purposes. It does not claim plaintiffs' land. Presumably, it had no intention to 'take' or pay for plaintiffs' land or any rights therein. G.S. 40-12 *et seq.,* with provisions for commissioners, appraisal, viewing the premises, etc., are applicable only to instances where the condemnor acquires title and right to possession of specific land. They have no application here."

There is another consideration which seems to render the proceeding before the clerk inapposite here. G.S. 136-19 (the pertinent por-

tion of which has been rewritten, revised and codified as G.S. 136-103 *et seq.*), provides that the landowner must file his proceeding for compensation within six months after notice of completion of the highway project is posted, or, if no such notice is posted, within twelve months of the actual completion of the project. This provision would make a recovery by the plaintiff in the instant case impossible. Where there has been a taking of property by the construction and maintenance of a nuisance, the right of action does not accrue until damage has occurred. *Raleigh v. Edwards, supra; McDaniel v. Greenville-Carolina Power Co.,* 78 S.E. 980, 6 A. L. R. 1321 (S.C. 1913). And ordinarily the applicable statute of limitations begins to run against the landowner at the time the first damage arises from the nuisance. *McCary v. McLendon,* 70 S. 715 (Ala. 1915). In the case at bar it appears that Highway 158 By-pass was constructed in 1959. The first damage occurred in March 1962. If G.S. 136-19 should be plaintiff's exclusive remedy and its provisions strictly applied, his cause of action would have been barred before it accrued.

The judgment below is

Reversed.