***********
Prior to this matter coming on to be heard Defense Counsel contacted the Deputy Commissioner and asked that his pending Motion for Summary Judgment be heard prior to this matter being heard. The Deputy Commissioner informed counsel for each side that the hearing of the Summary Judgment Motion would be at the time this matter had been set to be heard and should the Motion for Summary Judgment be denied, then the case would proceed immediately to trial on the merits. Thereafter, counsel for defendant continued to call asking what did that mean and on each occasion he was informed that his motion would be heard first and should the Motion for Summary Judgment be denied, then the case would proceed immediately to trial on the merits. Defense counsel continued to call including calls and e-mails to Chief Deputy Stephen Gheen who also informed him of how the matter would proceed. Thereafter, counsel for defendant filed Notice of Appeal because he claimed that Deputy Commissioner Glenn had refused to hear defendant's Motion for Summary Judgment. It should be noted that both parties received the calendar in this matter some 5 weeks prior to the date of the hearing and defense counsel had not requested that the Summary Judgment Motion be heard until approximately 2 weeks prior to the scheduled hearing, that on or about October 9, 2003, defense counsel asked that this matter be continued and the same was denied and thereafter defense counsel on or about October 17, 2003 forwarded to Deputy Commissioner Glenn defendant's Motion For Summary Judgment and shortly thereafter both parties were advised that this matter would be heard as scheduled and all pending motions would be heard prior to any hearing on the merits.
On the date of the hearing before the Deputy Commissioner defense counsel was allowed to argue his motions, the same was denied and defense counsel noted that he was appealing the denial of his motions to dismiss this action. Thereafter, defense counsel was again told that the merits of the matter would be heard and he indicated that he would not participate in the hearing because the Deputy Commissioner did not have jurisdiction to hear this matter due to defendant's notice of appeal to the Full Commission. Defense counsel was again told that the hearing on the merits was going forward and defense counsel was asked whether he understood the impact of his refusal to participate in the hearing would have on his client and he responded that it most likely would result in judgment being entered against his client. Thereafter this matter was heard on its merits and defense counsel refused to participate in the same.
The parties were ordered to draft a Pre-Trial Agreement with the same to be provided to the Deputy Commissioner a week prior to the hearing of this matter. Plaintiff's counsel drafted a proposed Pre-Trial Agreement and forwarded the same to defense counsel for his input within the time allowed. Defense counsel did not provide his portion of the Pre-Trial Agreement. The parties were directed that if they could not agree as to the Pre-Trial Agreement then they were to draft a separate Pre-Trial Agreement and forward the same to the Deputy Commissioner. Defense counsel did not provide the Pre-Trial Agreement as ordered and when asked why not he did not give any reason.
 *********** DENIAL OF MOTION FOR SUMMARY JUDGMENT
We first consider the denial of defendant's Motion for Summary Judgment.
Defendant based its motion for summary judgment on the legal doctrine of res judicata (or, more properly in the context of this case, collateral estoppel).
 ". . . under res judicata as traditionally applied, a final judgment on the merits in a prior action will prevent a second suit based on the same cause of action between the same parties or those in privity with them. When the plaintiff prevails, his cause of action is said to have "merged" with the judgment; where defendant prevails, the judgment "bars" the plaintiff from further litigation. In either situation, all matters, either fact or law, that were or should have been adjudicated in the prior action are deemed concluded. See Restatement (Second) of Judgments § 18, 19 (1982); 1B Moore's Federal Practice § 405[1] at 181-85 (2d ed. 1984). Under collateral estoppel as traditionally applied, a final judgment on the merits prevents relitigation of issues actually litigated and necessary to the outcome of the prior action in a later suit involving a different cause of action between the parties or their privies. See Restatement (Second) of Judgments § 27 (1982); [FN2] 1B Moore's Federal Practice § 0.441 [1] at 718 (2d ed. 1984).
McInnis v. Hall, 318 N.C. 421, 349 S.E.2d 552 (1986).
Res judicata does not apply because the suit in Superior Court was not based upon the same cause of action. The suit in Superior Court was based upon the statutory remedy of inverse condemnation as provided in N.C. Gen. Stat. § 136-111 (Added by Laws 1959, c. 1025, § 2. Amended by Laws 1961, c. 1084, § 6; Laws 1963, c. 1156, § 8; Laws 1965, c. 514, §§ 1, 1 1/2; Laws 1971, c. 1195; Laws 1973, c. 507, § 5; Laws 1977, c. 464, §§ 7.1, 29; Laws 1985, c. 182, § 1). The suit before the Industrial Commission is based upon the statutory remedy of tort claim as provided in N.C. Gen. Stat. § 143-291 (1951, c. 1059, s. 1; 1953, c. 1314; 1955, c. 400, s. 1; c. 1102, s. 1; c. 1361; 1957, c. 65, s. 11; 1965, c. 256, s. 1; 1967, c. 1206, s. 1; 1971, c. 893, s. 1; 1973, c. 507, s. 5; c. 1225, s. 1; 1977, c. 464, s. 34; c. 529, ss. 1, 2; 1979, c. 1053, s. 1; 1987, c. 684, s. 1; 1987 (Reg. Sess., 1988), c. 1087, s. 1; 1993 (Reg. Sess., 1994), c. 769, s. 19.33(a); c. 777, s. 5(a).)
Collateral estoppel does not apply. The elements of collateral estoppel are: (1) the prior suit resulted in a judgment on the merits; (2) identical issues are involved; (3) the issue was actually litigated and necessary to the judgment; and (4) the issue was actually determined.Thomas M. McInnis Associates, Inc., v. Hall, 318 N.C. 421, 349 S.E.2d 552
(1986), cited in Alt vs. John Umstead Hospital, 125 N.C. App. 193,479 S.E.2d 800, disc. rev. denied, 345 N.C. 639, 483 S.E.2d 702 (1997). The Superior Court suit was dismissed pursuant to a Rule 12(b) Motion. Query whether this qualifies as a judgment on the merits with respect to a claim of collateral estoppel. Identical issues were not involved. No issue was actually litigated in the Superior Court lawsuit and no issue was actually determined.
Elements of inverse condemnation are a taking of an interest in real property by a public agency for a public purpose. A requisite for holding a public entity liable, on an inverse condemnation theory, for injury to property is a finding that the use of a public improvement for its intended purpose has proximately caused physical injury to private property. The statutory remedy of inverse condemnation grew out of the common law actions of trespass and nuisance and when the inverse condemnation statute says its remedy is in lieu of remedies at common law, proper statutory construction is that it is in lieu of remedies of trespass and nuisance. In addition, although grounded in negligence, a state tort claim was not available at common law because of application of the doctrine of sovereign immunity. Thus the legislature could not be speaking of a tort claim when it says that inverse condemnation is in lieu of actions under common law.
Elements of a tort pursuant to the North Carolina Tort Claims Act are that the:
 "claim arose as a result of the negligence of any officer, employee, involuntary servant or agent of the State while acting within the scope of his office, employment, service, agency or authority, under circumstances where the State of North Carolina, if a private person, would be liable to the claimant in accordance with the laws of North Carolina. If the Commission finds that there was such negligence on the part of an officer, employee, involuntary servant or agent of the State while acting within the scope of his office, employment, service, agency or authority, which was the proximate cause of the injury and that there was no contributory negligence on the part of the claimant or the person in whose behalf the claim is asserted . . ."
Because these same plaintiffs filed a lawsuit against the Department of Transportation in the Superior Court of Pitt County involving a claim for inverse condemnation concerning the same real estate which is the subject matter of the instant tort claim and because that lawsuit was dismissed, the Department of Transportation took the position that the instant tort claim should be dismissed under the doctrine of res judicata [more properly collateral estoppel]. Defendant's reasoning is faulty.
Pursuant to the State Tort Claims Act, exclusive original jurisdiction of claims against the State or its institutions and agencies, in which injury is alleged to have occurred as a result of the negligence of an employee of the State, is vested in the North Carolina Industrial Commission. N.C. Gen. Stat. § 143-291 et seq. Thus, plaintiffs' tort claim against the Department of Transportation could not have been adjudicated in the prior proceeding because the Superior Court had no jurisdiction over a tort claim against the State. Alt vs. John UmsteadHospital, 125 N.C. App. 193, 479 S.E.2d 800, disc. rev. denied,345 N.C. 639, 483 S.E.2d 702 (1997).
The fact that plaintiffs alleged the same background facts in their inverse condemnation lawsuit in Superior Court as they alleged in their tort claim before the Industrial Commission is not dispositive. The same set of facts often supports more than one statutory remedy or remedy at law. When they do and one remedy has been awarded, the other remedy is often precluded by the doctrine of election of remedies.
The Full Commission finds that the Deputy Commissioner's action in denying defendant's Motion For Summary Judgment was entirely proper. Since this was an interlocutory decision, it was likewise proper to proceed with trial on the merits. Defendant's appeal from an interlocutory order deciding only one element in the case did not stay the hearing on the remaining elements of the case.
The Full Commission also finds that the Deputy Commissioner's action in proceeding to trial on the merits was also proper. All parties were on notice that this procedure would be followed in the event defendant was not successful in its Motion For Summary Judgment.
Tort Rule T308 provides:
 When a case is appealed to the Full Commission or to the Court of Appeals, all decisions and orders of a Deputy Commissioner or the Full Commission are stayed pending appeal.
Tort Rule T501 provides:
 In the interest of justice, any Tort Claims Rule may be waived by a Commissioner, Deputy Commissioner, or the Full Commission.
Defendant takes the position that the Deputy Commissioner was without jurisdiction to proceed with a trial on the merits because the Deputy's decision and order on Summary Judgment was stayed by reason of Rule T308 when defendant gave notice of appeal. Although the Deputy Commissioner did not formally say he was invoking Rule T501 that was the effect when he told all parties that the case would be tried on the merits immediately after he ruled on the Summary Judgment Motion if he denied that motion. Trying a case on the merits on the same day of denial of a Summary Judgment Motion is standard practice in the Courts of North Carolina and in the Industrial Commission. For example, in the Alt case cited above, defendant hospital moved for summary judgment in the tort action on the grounds that the dismissal of the claims against the defendants in Alt v. Parker in Superior Court was a bar to the tort action on res judicata principles. The motion was denied by the deputy commissioner and the matter proceeded to a hearing.
In any event, the Full Commission now applies Rule T501 and declines to apply Rule T308 to the circumstances of this case. The Deputy Commissioner was correct in proceeding to trial on the merits.
The Full Commission also finds that defendant's argument that inverse condemnation provides the sole remedy is also without merit. We find nothing in the statutes or caselaw that support this position. Damages for inverse condemnation apply only to real property, not to personal property. Midgett v. North Carolina State Highway Com'n, 260 N.C. 241,132 S.E.2d 599 (1963). Thus, in order to recover for damage to contents of their home caused by defendant's negligence, plaintiffs would have to seek a remedy under the tort claims act.
The Full Commission now turns to consideration of the case on its merits.
 ***********
The Full Commission reviewed the prior Decision and Order, based upon the record of the proceedings before Deputy Commissioner Glenn and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Decision and Order except for minor modifications. Accordingly, the Full Commission affirms the Decision and Order of Deputy Commissioner Glenn with modifications.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiffs are husband and wife and reside at 2738 Stoneybrook Drive, Farmville, Pitt County, North Carolina.
2. Plaintiffs own a house and two lots at 2738 Stoneybrook Drive that abut State Road 1217.
3. Plaintiffs own this property as tenants by the entirety in fee simple as described on the Deed recorded at Book 583, Page 89 of the Pitt County Register of Deeds, and that the plaintiffs reside on this property as their permanent residence.
4. The property owned by the plaintiffs includes their home, outdoor swimming pool, decking and patio, associated wooden fencing and yard areas.
5. On or about September 15, 1999, the plaintiffs' property and home were severely damaged from flooding. The source of the water was Hurricane Floyd. However, had it not been for the negligence of defendant's agents, there would have been far less water damage to plaintiffs' property.
6. The cause of the flooding was a buried drainage pipe installed by defendant's agents under State Road 1217, located in the defendant's right of way, and maintained by the defendant to serve a drainage ditch contiguous with and adjacent to plaintiffs' home and property.
7. The size of this buried drainage pipe was 18 to 24 inches. Danny Taylor, the District engineer for N.C. Department of Transportation, testified, and the Full Commission finds as fact, that the drainage pipe adjacent to plaintiffs' home was designed to handle drainage from 28 acres when it should have been designed to handle between 50 and 100 acres, the actual size of the drainage area flowing into the drainage pipe. The proper pipe size was a 48 inch pipe as opposed to the smaller pipe that was removed from this site.
8. Subsequent to this flooding of the plaintiffs' home and property, defendant installed a new and larger drainage pipe in the same location contiguous with and adjacent to the plaintiffs' property in order to allow adequate drainage flow under State Road 1217 and to prevent further flooding.
9. The new drainage pipe installed by the defendant was 48 inches in size in order to allow adequate flow from the relevant drainage area.
10. The sizing of this new drainage pipe installed by the defendant was based on calculations by or on behalf of the defendant of the relevant drainage area for that location. Plaintiffs experienced some flooding to their property prior to the hurricane and during the hurricane but have not experienced flooding since the installation of this larger drainage pipe.
11. In accordance with the defendant's "General Drainage Policies and Practices", the defendant had a duty to provide for adequate drainage in the construction and maintenance of State roadways, including State Road 1217, and further had a duty to properly size, inspect and maintain drainage pipes such as the pipe located under State Road 1217 adjacent to the plaintiffs' property.
12. In accordance with the defendant's "General Drainage Policies and Practices", the defendant had a duty to keep drainage structures located within its right of way "open and maintained at a functioning level such that they do not present an unreasonable level of damage potential for the highway or adjacent properties" and also had a duty to maintain drainage pipes in such a manner so as to prevent obstructions and provide adequate drainage.
13. Defendant breached its duties to the plaintiffs by not properly and adequately sizing, inspecting or maintaining the drainage pipe in question located under State Road 1217 contiguous with and adjacent to the plaintiffs' home and property. Had the pipe been properly sized and maintained, the flood waters from Hurricane Floyd would not have caused the damages they caused.
14. As a result of this breach, the plaintiffs' home and property were flooded and the plaintiffs sustained damages to their home and property from such flooding which required extensive restoration and repairs.
15. The cause of the flooding to the plaintiffs' home and property and the resulting damages was the defendant's failure to properly and adequately size, inspect and maintain the drainage pipe in question located under State Road 1217.
16. The plaintiffs presented evidence in the form of photographs and documentation of the restorations and repairs to their home and property necessitated by the flooding.
17. As a result of the flooding to their home and property, the plaintiffs were forced to seek the assistance of the United States Small Business Association in order to enable them financially to make the necessary restorations and repairs to their home and property.
18. Plaintiffs suffered the following financial losses due to the damages to their home and property as a result of the flooding caused by the defendant's negligence (Plaintiffs' Exhibits 20 21):
Repair/replace disaster damaged real estate (home repairs) $50,400.00
Repair/replace disaster damaged landscaping 4,600.00
 Repair/replace disaster damaged improvements (septic system) 23,200.00
Install required disaster mitigation measures/devices 12,600.00
Repair/replace disaster damaged personal property 13,100.00
TOTAL DAMAGES $103,900.00
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Under the Tort Claims Acts, negligence is determined by the same rules applicable to private parties. Bolkir v. N.C. State Univ.,321 N.C. 706, 709 (1998). Plaintiffs have shown that the damages they sustained were the proximate result of a negligent act of defendant. N.C. Gen. Stat. § 143-291. Defendant breached its duty to plaintiffs by not properly and adequately sizing, inspecting or maintaining the drainage pipe in question located under State Road 1217 contiguous with and adjacent to plaintiffs' home and property. As a result of this breach, the plaintiffs' home and property were flooded and the plaintiffs sustained damages to their home and property from such flooding which required extensive restoration and repairs.
2. Plaintiffs have established actionable negligence by showing that defendant failed to exercise due care in the performance of a legal duty owed to plaintiffs under the circumstances. Bolkir at 900. Due diligence requires defendant to adequately size, inspect, and maintaining the drainage pipes under State Road 1217.
3. As a result of defendant's breach of the above-mentioned duty, the defendant is liable to plaintiffs for damages sustained as a consequence of such breach. N.C. Gen. Stat. § 143-291.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
WHEREFORE, based on all matters properly of record in this matter, it is hereby ORDERED, ADJUDGED AND DECREED that the plaintiffs have and recover of the defendant the full sum of One Hundred Three Thousand, NineHundred Dollars ($103,900.00), together with the award of filing fees, costs and pre-judgment and post-judgment interest thereon as by law provided.
This 16th day of September 2004.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER