LLOYD O. HUGHES AND WIFE, MARY C. HUGHES v. CITY OF HIGH POINT

No. 8218SC42

(Filed 3 May 1983)

1. **Municipal Corporations § 21; Nuisance § 7— city's operation of sewer system as nuisance**

     Plaintiffs' evidence on motion for summary judgment was sufficient to support a finding that defendant city's operation of its sewer system in its existing condition after notifying plaintiffs that it would no longer attempt to correct a sewage overflow problem constituted a nuisance entitling plaintiffs to compensation for permanent damages to their property where it tended to show that the sewer line maintained by defendant to which plaintiffs' sewage disposal system connected was at least 50 years of age; in 1971 defendant's sewer system began to malfunction, causing an intermittent overflow of raw sewage into plaintiffs' basement during periods of rainfall; defendant attempted to correct the problem until 2 November 1979, at which time it notified plaintiffs it would not take any other steps to rectify the condition; and the overflow was caused by the deterioration of defendant's sewer lines.

2. **Evidence § 48— qualification of experts—opinion based on facts in report in evidence**

     A licensed professional engineer and a mechanical engineer engaged in the plumbing and heating business could properly testify as experts as to the cause of sewer line failures and could properly state opinions based on facts contained in a report which was in evidence.

APPEAL by plaintiffs from *Wood, Judge.* Judgment entered 9 December 1981 in Superior Court, GUILFORD County. Heard in the Court of Appeals 9 November 1982.

This is an action in which the plaintiffs contend that they have suffered permanent damage to their home as the result of the maintenance of a sanitary sewer system by the defendant City. The plaintiffs contend that the operation of the sewer system by the defendant constitutes a nuisance and they are entitled to compensation for permanent damage to their property.

The defendant moved for summary judgment. The papers filed in support and in opposition to the motion for summary judgment showed that the defendant is a municipal corporation which maintains a sanitary sewer system for those owning property within the city limits. In 1957 the plaintiffs purchased a house and lot within the city limits which was served by the sanitary sewer system maintained by the City. The sewer line maintained by the

defendant to which the plaintiffs' sewage disposal system connects is at least 50 years of age. The plaintiffs began experiencing trouble with their sewage disposal in 1971. The plaintiffs have plumbing facilities in the basement of their home and these facilities began to overflow with raw sewage during periods of rainfall.

The defendant made several efforts through the years to correct the plaintiffs' problems. In 1979 the City tested the sewer lines serving the plaintiffs' house and concluded on 2 November 1979 that the problem was caused by: (1) the plaintiffs' plumbing facilities in their basement being lower than could properly be served by the City's gravity-flow sewage system; (2) the plaintiffs' failure to install a check valve in their service main; and (3) the plaintiffs' maintenance of drains and downspouts which run into the City's sewer lines. The defendant notified the plaintiffs at that time that they would take no more action to solve the problem.

The plaintiffs filed an affidavit by William Daniel, a licensed professional engineer. Mr. Daniel stated in this affidavit that in his opinion, the sewage overflow in the plaintiffs' basement was caused by the deterioration of the defendant's sewage line. This deterioration had reduced the capacity of the sewage line to carry what it was designed to carry and allowed storm water into the line which caused further back-up of sewage. Mr. Daniel stated that in his opinion the only way the problem could be solved was by replacing the defendant's sewage line. The plaintiffs filed an affidavit by Gerald R. Buchanan, who has a B.S. degree in mechanical engineering from North Carolina State University and is engaged in the plumbing and heating business in High Point. He stated in his opinion "that the overflow of sewage into the HUGHES' residence during periods of heavy rain is caused by infiltration of storm water into the CITY'S sanitary sewer outfall during periods of heavy rainfall through cracks and eroded joints that have developed over the years from normal wear and tear, action of the elements and intrusion of tree roots . . . ." The court granted the defendant's motion for summary judgment. The plaintiffs appealed.

*Haworth, Riggs, Kuhn, Haworth and Miller, by John Haworth, for plaintiff appellants.*

*Wyatt, Early, Harris, Wheeler and Hauser, by William E. Wheeler, for defendant appellee.*

WEBB, Judge.

[1] If a governmental entity builds and maintains a structure which is permanent in nature and the maintenance of the structure causes a diminution in value to a person's real estate, the structure is considered a nuisance and the landowner is entitled to compensation. *See Midgett v. Highway Commission,* 265 N.C. 373, 144 S.E. 2d 121 (1965); *Glace v. Pilot Mountain,* 265 N.C. 181, 143 S.E. 2d 78 (1965); *Midgett v. Highway Commission,* 260 N.C. 241, 132 S.E. 2d 599 (1963); and *Clinard v. Kernersville,* 215 N.C. 745, 3 S.E. 2d 267 (1939). In this case the evidence when considered most favorably for the plaintiffs is that the defendant's sewage system as originally constructed did not cause any damage to the plaintiff's property. In 1971 the defendant's sewage system began to malfunction, causing an intermittent overflow of raw sewage in the plaintiffs' basement. The defendant attempted to remedy the condition until 2 November 1979, at which time it notified the plaintiffs it would not take any other steps to rectify the condition.

As we understand the law, it is the maintenance of a structure or condition permanent in nature which constitutes a nuisance. The defendant would not be liable for a nuisance if it had negligently maintained or performed some work on a structure which caused some temporary inconvenience to the plaintiffs. We do not believe the defendant was maintaining a nuisance so long as it was attempting to repair or change the sewage system so that it would not overflow on the plaintiffs' property. When the defendant notified the plaintiffs that it would no longer attempt to correct the problem but would maintain the system in its then existing condition, we believe defendant started to maintain a nuisance.

[2] Defendant argues that there is not sufficient evidence that the deterioration of its sewage lines caused the overflow for the jury to find this fact. It contends that the affidavits of Mr. Buchanan, the plumber, and Mr. Daniel, the engineer, should not

be considered because their opinions as to the cause of the overflow were based in part on the information given to them by the plaintiffs and were thus based on "hearsay, speculation and conjecture." Mr. Buchanan and Mr. Daniel, because of their education and experience, are better qualified than would be a jury to form opinions as to the causes of failures in sewer lines. They qualify as expert witnesses. *See* 1 Brandis on N.C. Evidence Sec. 133 (1982). The report by the defendant as to its experiments to determine the cause of the problem was in evidence. The expert witnesses may give their opinions as to causation based on the facts obtained in the report. The two cases cited by the defendant, *Hubbard v. Oil Co.*, 268 N.C. 489, 151 S.E. 2d 71 (1966) and *Keith v. Gas Co.*, 266 N.C. 119, 146 S.E. 2d 7 (1965), do not apply. In each of them, an expert witness gave an opinion based on a hypothetical question which assumed facts not in evidence. Our Supreme Court held this was error. In this case, the facts on which the expert witnesses based their opinions were in evidence.

The defendant also argues that the expert witnesses could not testify that the overflow was caused by breaks in the sewer line because there was no evidence of broken or damaged lines. The witnesses' opinions based on the facts before them were that there were breaks in the line which caused the overflow. The formation of this opinion was within the parameters of the witnesses' expertise.

The defendant contends further that the overflow could be as well caused by breaks in the plaintiffs' line or the lines of a neighbor. These are questions for the jury. The defendant argues further that the plaintiffs' plumbing facilities which overflow are located below the street level; and the North Carolina State Building Code requires a backwater valve for such facilities, which the plaintiffs have not installed. We reiterate that we are passing on a motion for summary judgment. We believe the plaintiffs have presented sufficient evidence of the cause of the overflow to make it a question for the jury. If the jury believes that the overflow was caused by the basement facilities being too low, they may decide the case for the defendant. We cannot make this decision.

The defendant also contends the plaintiffs have not shown they have suffered damage. There is evidence that raw sewage

was overflowing intermittently in the plaintiffs' basement. Mr. Hughes testified that the house was not marketable. We believe he was competent to give this testimony. *See* 1 Brandis on N.C. Evidence Sec. 128 (1982). This establishes damage to the plaintiffs.

The defendant contends that the claim arose in 1971 and it was not filed within the required time. In light of our holding that the plaintiffs did not have a claim based on a nuisance until 2 November 1979, we reject this argument.

We hold that there should be a trial as to whether the defendant is maintaining a nuisance and whether the plaintiffs have been damaged thereby.

Reversed and remanded.

Judges HEDRICK and BECTON concur.