IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA18-1084

 Filed: 4 February 2020

Mecklenburg County, Nos. 16 CVS 19141, 17 CVS 21467

MATTHEW WAGNER, et al., Plaintiffs

 v.

CITY OF CHARLOTTE, Defendant

 Appeal by Plaintiffs from Orders entered 2 April 2018 by Judge W. Robert Bell

in Mecklenburg County Superior Court. Heard in the Court of Appeals 24 April 2019.

 The Odom Firm, PLLC, by Thomas L. Odom, Jr., and David W. Murray, for
 plaintiffs-appellants.

 Law Offices of Lori Keeton, by Lori R. Keeton, and Charlotte City Attorney’s
 Office, by R. Harcourt Fulton, for defendant-appellee.

 HAMPSON, Judge.

 Factual and Procedural Background

 Matthew Wagner (Wagner), Lianne Lichstrahl (Lichstrahl), Brad Henke

(Henke), and Victoria Siravo (Siravo) (collectively, Plaintiffs) appeal from an Order

entered 29 March 2018: (1) granting Summary Judgment to the City of Charlotte (the

City) on Plaintiffs’ claims for Inverse Condemnation, Negligence, Private Nuisance,

Trespass, and violations of Due Process and Equal Protection under the North
 WAGNER V. CITY OF CHARLOTTE

 Opinion of the Court

Carolina Constitution and dismissing Plaintiffs’ claims in both 16 CVS 19141 and 17

CVS 21467; and (2) dismissing as moot, inter alia, Plaintiffs’ Motion for Partial

Summary Judgment on Inverse Condemnation, Plaintiffs’ Motion to Strike the City’s

Affirmative Defenses or, in the alternative, for Summary Judgment as to the City’s

Affirmative Defenses, Plaintiffs’ Motion for Protective Order, and Plaintiffs’ request

to consolidate the related actions. Plaintiffs also appeal from a separate Order

entered on the same day denying their Motion for Reconsideration but, in briefing,

raise no distinct arguments regarding this separate Order. The Record before us

tends to show the following:

 As of 23 November 2014, Wagner and Lichstrahl owned and resided at 3414

Carmel Road, although they subsequently sold this property in 2016 prior to

commencing this litigation. Henke and Siravo were the owners and residents of 3418

Carmel Road, which they continued to own during the litigation.

 In the early morning hours of 23 November 2014, a City water main pipe burst

in the 4100 block of Carmel Road in Charlotte. The City Fire Department received a

911 call at around 6:20 a.m. and in turn alerted the City’s water department (City

Water). At 6:24 a.m., a dispatcher for City Water contacted team leaders regarding

a potential hydrant leak. At 6:48 a.m., the team leaders instructed the dispatcher to

send a crew to make repairs. No crew was immediately available, so an on-call repair

crew from Huntersville was paged between 6:45 and 7:00 a.m. The first crewmember

 -2-
 WAGNER V. CITY OF CHARLOTTE

 Opinion of the Court

reported to Huntersville at 7:19 a.m. The Huntersville crew did not arrive and begin

cutting off water until 8:40 a.m.

 As a result of a separate call to 311 by a neighboring homeowner at 7:16 a.m.,

a City Water Customer Service Technician also reported to the scene, arriving at 7:40

a.m. The Customer Service Technician called in an emergency requiring additional

crew between 7:45 and 8:00 a.m. with a second call being made between 8:30 and 8:35

a.m.

 Henke awoke at around 6:30 a.m. to discover the Henke/Siravo residence had

already flooded. Wagner testified the Wagner/Lichstrahl residence began to flood

around 8:15 or 8:30 a.m., although he had also previously reported flooding began

between 7:15 and 8:00 a.m. The City contends the flooding likely began even earlier

than that.

 The water was not cut off at the main and did not begin to recede from the

homes until between 9:30 and 10:00 a.m. As a result of the burst water main, both

residences flooded and suffered flood damage. Plaintiffs were required to temporarily

move out of their homes while the homes underwent substantial repair and

renovation.

 In the days following, Plaintiffs submitted claims to the City for their

respective damages. On 19 December 2014, the City denied those claims based on its

own investigation determining there was no negligence on the part of the City.

 -3-
 WAGNER V. CITY OF CHARLOTTE

 Opinion of the Court

Plaintiffs met with City representatives on 28 January 2015, where the City

reiterated its position. Plaintiffs submitted public records requests to the City

seeking documents related to their claims, and the City responded to those records

requests in January and April 2015. On 10 September 2015, Plaintiffs, through

counsel, wrote to the City informing the City that Plaintiffs were represented by

counsel and were pursuing claims. This letter also requested the City preserve all

evidence related to the claims including the section of the broken pipe. After receiving

this letter, the City instituted a litigation hold on 30 September 2015. At some point

between the January 2015 meeting and the City’s receipt of Plaintiffs’ letter,

however, the City had already disposed of the section of broken pipe through its usual

scrap sale process.

 On 24 October 2016, Plaintiffs filed their first Complaint against the City in

Mecklenburg County Superior Court1 (the 2016 Lawsuit). This Complaint alleged

claims including: Negligence, due to the City’s failure to properly install or maintain

the pipe and failure to promptly cut off water to and repair the pipe when it ruptured;

Private Nuisance; Inverse Condemnation of a Temporary Drainage Easement;

Unlawful Taking under the Fifth Amendment of the United States Constitution;

violation of Equal Protection pursuant to the Fourteenth Amendment; and Unlawful

 1 Mecklenburg County Superior Court file number 16 CVS 19141.

 -4-
 WAGNER V. CITY OF CHARLOTTE

 Opinion of the Court

Taking under the North Carolina Constitution. The Complaint further alleged

spoliation of evidence arising from the City’s disposal of the broken section of pipe.

 On 21 November 2016, the City filed a Notice of Removal to the United States

District Court for the Western District of North Carolina, asserting the case invoked

a federal question citing Plaintiffs’ claims under the United States Constitution. On

29 December 2016, Plaintiffs filed a Motion for Leave to File an Amended Complaint

in the United States District Court along with a Motion to Remand to State Court.

The proposed Amended Complaint abandoned Plaintiffs’ claims under the United

States Constitution. The United States District Court granted both Motions on 27

February 2017. Upon remand to state court, Plaintiffs filed their Amended

Complaint on 10 March 2017. On 4 April 2017, the City filed an Answer to the

Amended Complaint, including a Motion to Dismiss and multiple affirmative

defenses.

 On 21 November 2017, Plaintiffs initiated a second action (the 2017 Lawsuit)

by filing a Complaint asserting a trespass-based claim.2 Meanwhile in the 2016

Lawsuit, on the same day, Plaintiffs filed a Motion to Amend their Complaint to add

Trespass as a cause of action.

 On 4 December 2017, Plaintiffs filed a Motion for Partial Summary Judgment

in the 2016 Lawsuit as to their claims for Inverse Condemnation, Private Nuisance,

 2 17 CVS 21467.

 -5-
 WAGNER V. CITY OF CHARLOTTE

 Opinion of the Court

and Trespass. Plaintiffs also filed a Motion to Strike Defendant’s Affirmative

Defenses, or in the alternative, Motion for Summary Judgment to Dismiss

Defendant’s Affirmative Defenses. In a Motion, filed the same day, in the 2017

Lawsuit, Plaintiffs requested the 2017 Lawsuit be consolidated with the 2016

Lawsuit. On 12 December 2017, the City filed its own Motion for Summary

Judgment. On 19 December 2017, the City also filed a separate Motion to Dismiss

the 2017 Lawsuit.

 The matter came on for hearing before the trial court on 26 February 2018,

and the trial court rendered its ruling on 9 March 2018, granting the City’s Motion

for Summary Judgment. On 14 March 2018, Plaintiffs filed a Motion for

Reconsideration of this ruling. On 2 April 2019, the trial court entered its Order

granting the City’s Motion for Summary Judgment and denying the remaining

motions as moot. The trial court determined the City was entitled to summary

judgment as to all claims—specifically, Plaintiffs’ claims for Inverse Condemnation,

Negligence, Trespass,3 Private Nuisance, Equal Protection, Due Process, and

Spoliation. This Order dismissed both the 2016 and 2017 Lawsuits. The same day,

the trial court entered a separate Order denying Plaintiffs’ Motion for

 3 The parties and the trial court treated Plaintiffs’ Motion to Amend the Complaint to add
Trespass as a claim in the 2016 Lawsuit as having been granted for purposes of the Summary
Judgment Hearing. As such, we too operate on the basis the Motion to Amend the Complaint was
granted.

 -6-
 WAGNER V. CITY OF CHARLOTTE

 Opinion of the Court

Reconsideration. On 12 April 2018, Plaintiffs timely filed Notice of Appeal from both

Orders entered on 2 April 2018.

 Issues

 On appeal, the dispositive issues are whether the trial court properly granted

Summary Judgment for the City on Plaintiffs’: (I) Inverse Condemnation claim based

on a single, nonrecurring incidence of flooding resulting in temporary damage arising

from the broken water pipe; (II) Negligence claims; (III) Private Nuisance claims; (IV)

Trespass claims; and (V) the remaining state constitutional claims. We also,

however, address the trial court’s denial based on mootness of the remaining

peripheral motions.

 Standard of Review

 “This Court reviews the trial court’s grant of summary judgment de novo.”

Asheville Sports Properties, LLC v. City of Asheville, 199 N.C. App. 341, 344, 683

S.E.2d 217, 219 (2009). “Summary judgment is appropriate only when ‘the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that

any party is entitled to a judgment as a matter of law.’ ” Id. (quoting N.C. Gen. Stat.

§ 1A-1, Rule 56(c)).

 Analysis

 I. Inverse Condemnation

 -7-
 WAGNER V. CITY OF CHARLOTTE

 Opinion of the Court

 Plaintiffs first contend the trial court erred in granting Summary Judgment in

favor of the City and denying Summary Judgment in favor of Plaintiffs, on Plaintiffs’

Inverse-Condemnation claim. Plaintiffs asserted claims for Inverse Condemnation

both under statutory grounds pursuant to N.C. Gen. Stat. § 40A-41 and under the

Law of the Land Clause found in Article I, Section 19 of the North Carolina

Constitution.

 Under the North Carolina Constitution:

 We recognize the fundamental right to just compensation as so
 grounded in natural law and justice that it is part of the
 fundamental law of this State, and imposes upon a governmental
 agency taking private property for public use a correlative duty to
 make just compensation to the owner of the property taken. This
 principle is considered in North Carolina as an integral part of
 “the law of the land” within the meaning of Article I, Section 19
 of our State Constitution.

Long v. City of Charlotte, 306 N.C. 187, 196, 293 S.E.2d 101, 107-08 (1982).

 “ ‘[I]nverse condemnation [ ]’ [is] a term often used to designate ‘a
 cause of action against a governmental defendant to recover the
 value of property which has been taken in fact by the
 governmental defendant, even though no formal exercise of the
 power of eminent domain has been attempted by the taking
 agency.’ ”

Wilkie v. City of Boiling Spring Lakes, 370 N.C. 540, 552, 809 S.E.2d 853, 861-62

(2018) (alterations in original) (quoting City of Charlotte v. Spratt, 263 N.C. 656, 662-

63, 140 S.E.2d 341, 346 (1965)). “Inverse condemnation is simply a device to force a

governmental body to exercise its power of condemnation, even though it may have

 -8-
 WAGNER V. CITY OF CHARLOTTE

 Opinion of the Court

no desire to do so.” Smith v. City of Charlotte, 79 N.C. App. 517, 521, 339 S.E.2d 844,

847 (1986). Section 40A-51 of our General Statutes provides for the remedy of inverse

condemnation when “property has been taken by an act or omission of a condemnor

listed in [N.C. Gen. Stat §] 40A-3(b) or (c) and no complaint containing a declaration

of taking has been filed[.]” N.C. Gen. Stat. § 40A-51 (2017).

 In this case, there is no dispute as to the applicability of the statutory inverse

condemnation procedure. Rather, the primary issue between the parties is whether

any taking took place giving rise to a claim for inverse condemnation. Specifically,

Plaintiffs contend the broken water pipe and resultant, one-time flooding of their

properties constituted a governmental taking entitling them to compensation. On

the other hand, the City argues a one-time, temporary flooding incident caused by a

broken water pipe should not constitute a taking under our existing case law.

 Indeed, our Courts have, on several occasions, addressed whether flooding of

private property resulted in a taking. In Eller v. Board of Education of Buncombe

County, our Supreme Court held property owners stated a takings claim where they

alleged construction of a school building impeded the flow of a natural spring causing

it to back up on to the private property and that the installation of a sewage disposal

device contaminated the natural spring, rendering both it and the property owners’

dwelling unfit. 242 N.C. 584, 586, 89 S.E.2d 144, 146 (1955). Similarly, in

Department of Transportation v. Bragg, our Supreme Court held a property owner

 -9-
 WAGNER V. CITY OF CHARLOTTE

 Opinion of the Court

was entitled to present evidence of damages resulting from a highway construction

project that resulted in a spring being diverted to drain onto the defendants’ property

and running underneath their motel. 308 N.C. 367, 369, 302 S.E.2d 227, 229 (1983)

(holding “[e]vidence of damage caused by the alleged water diversion is relevant to a

determination of the amount of just compensation due for the taking of the property”

either as a permanent or temporary drainage easement).

 In Midgett v. North Carolina State Highway Commission, our Supreme Court

held property owners stated a takings claim where highway construction resulted in

the damming of ocean water flowing over dunes and inundating private property. 260

N.C. 241, 248, 132 S.E.2d 599, 607 (1963), overruled on other grounds by Lea Co. v.

N.C. Bd. of Transp., 308 N.C. 603, 304 S.E.2d 164 (1983). The Midgett Court set out

the following controlling principles of law:

 There need not be a seizure of the property or dispossession of the
 owners; it is a taking if the value is substantially impaired.
 Permanent liability to intermittent, but inevitably recurring,
 overflows constitutes a taking. In order to create an enforceable
 liability against the government it is, at least, necessary that the
 overflow of water be such as was reasonably to have been
 anticipated by the government, to be the direct result of the
 structure established and maintained by the government, and
 constitute an actual permanent invasion of the land, or a right
 appurtenant thereto, amounting to an appropriation of and not
 merely an injury to the property.

Id. (citations omitted). The Midgett Court further described the necessity for a

“permanent” taking:

 - 10 -
 WAGNER V. CITY OF CHARLOTTE

 Opinion of the Court

 To constitute a permanent invasion of property rights and an
 impairment of the value thereof the obstruction or structure need
 not be permanent in fact, but it must be permanent in nature. A
 permanent structure is one which may not be readily altered at
 reasonable expense so as to remedy its harmful effect, or one of a
 durable character evidently intended to last indefinitely and
 costing practically as much to alter or remove as to build in the
 first place.

Id. However, the Court also made clear:

 The removal of the permanent structure during the pendency of
 the action and after direct damage has resulted from its
 construction and maintenance would not abate the action or
 prevent the recovery of permanent damages. Once the cause of
 action has occurred by the infliction of damage to the property,
 the taking is a fait accompli.

Id. at 248-49, 132 S.E.2d at 607 (citations omitted).

 Subsequently, in Lea Co., our Supreme Court upheld a judgment in favor of a

landowner where “the evidence tended to show that the structures built and

maintained by the defendant caused increased flooding and substantial injury to the

plaintiff’s relatively high density apartments in an urban area.” 308 N.C. at 620-21,

304 S.E.2d at 176. Building on Midgett, the Court emphasized: “Ordinarily, a

mechanical approach should not be taken with regard to the frequency of flooding

required to constitute a taking by ‘[p]ermanent liability to intermittent but inevitably

recurring overflows . . . .’ ” Id. (quoting Midgett, 260 N.C. at 248, 132 S.E.2d at 606).

 On the other hand, in Akzona, Inc. v. Southern Railway Co., our Supreme

Court, applying Lea Co., held it was error to submit an inverse-condemnation claim

 - 11 -
 WAGNER V. CITY OF CHARLOTTE

 Opinion of the Court

to a jury where an earth and gravel embankment constructed by the railway caused

a creek to back up during a rainstorm flooding upstream property. Akzona, Inc. v. S.

Ry. Co., 314 N.C. 488, 494, 334 S.E.2d 759, 763 (1985) The Court noted: “Under

pressure caused by relentless rainfall and the inability of a saturated ground to

absorb moisture, the dam burst. It was not replaced after it burst. Railroad’s

embankment, therefore, cannot subject plaintiff’s property to ‘[p]ermanent liability

to intermittent, but inevitably recurring, overflows . . . .’ ” Id. (quoting Lea Co., 308

N.C. at 618, 304 S.E.2d at 175). The Court stated its rule: “A single instance of

flooding with no possibility of recurrence, even if the direct result of [the condemnor’s]

structure, is not a taking of [private] property.” Id. at 494, 334 S.E.2d at 763.

 In light of our Supreme Court’s decision in Akzona, it would seem clear a single

instance of flooding from a broken water pipe that was repaired within hours would

not give rise to an inverse-condemnation claim. Plaintiffs, however, argue the United

States Supreme Court’s decision in Arkansas Game & Fish Commission v. United

States altered the waterfront for analyzing inverse-condemnation claims arising from

flooding. We disagree. To the contrary, Arkansas Game & Fish Commission is

generally consistent with the analysis historically employed by our state courts.

 In that case, over a period of approximately seven years, the U.S. Army Corps

of Engineers periodically authorized flooding of forest land owned and managed by

the Commission resulting in a loss of a substantial amount of timber. The

 - 12 -
 WAGNER V. CITY OF CHARLOTTE

 Opinion of the Court

Commission brought an action alleging a taking under the Fifth Amendment of the

United States Constitution. Arkansas Game & Fish Comm’n, 568 U.S. 23, 26, 184 L.

Ed. 2d 417, 423 (2012). The U.S. Supreme Court stated the question presented in

that case as “whether a taking may occur, within the meaning of the Takings Clause,

when government-induced flood invasions, although repetitive, are temporary.” Id.

The Court concluded “recurrent floodings, even if of finite duration, are not

categorically exempt from Takings Clause liability.” Id. at 27, 184 L. Ed. 2d at 423.

The Court clarified its ruling “that government-induced flooding temporary in

duration gains no automatic exemption from Takings Clause inspection.” Id. at 38,

184 L. Ed. 2d at 430-31. Instead, the Court pointed to a number of factors under

which to conduct the analysis, including the time or duration of the alleged taking,

“the degree to which the invasion is intended or is the foreseeable result of authorized

government action[,]” the character of the land and the owner’s reasonable

investment-backed expectations for the use of the land, and the severity of the

interference with that use. Id. at 38-39, 184 L. Ed. 2d at 431.

 This analysis is generally in harmony with our Supreme Court’s decision in

Lea Co., which acknowledged even earlier U.S. Supreme Court precedent was not

“intended to establish a requirement that flooding caused by government structures

must be shown to occur with any particular frequency before a taking will have

occurred.” Lea Co., 308 N.C. at 619, 304 S.E.2d at 175. Rather, the Lea Co. Court

 - 13 -
 WAGNER V. CITY OF CHARLOTTE

 Opinion of the Court

observed the focus should be on “the substantiality of the injury[.]” Id. Our Supreme

Court then put the key question as “whether it had been shown that substantial

injury had been caused as the foreseeable direct result of the structure built and

maintained by the government.” Id. at 620, 304 S.E.2d at 176.

 Thus, our Supreme Court’s decision in Lea Co. is generally consistent with

Arkansas Game & Fish Commission and, in fact, largely foreshadowed that decision.

As such, Arkansas Game & Fish Commission does not alter our course here. Akzona

followed the reasoning from Lea Co. and remains binding on this Court. Thus, we

conclude a single instance of temporary flooding of Plaintiffs’ properties without the

possibility of recurrence did not constitute a taking for purposes of an inverse-

condemnation claim. See Akzona, Inc., 314 N.C. at 493-94, 334 S.E.2d at 762-63; see

also Portsmouth Harbor Land & Hotel Co. v. United States, 260 U.S. 327, 329-30, 67

L.Ed. 287, 289 (1922) (“[W]hile a single act may not be enough, a continuance of them

in sufficient number and for a sufficient time may prove [a taking]. Every successive

trespass adds to the force of the evidence.”)4; Barnes v. United States, 538 F.2d 865,

870 (Ct. Cl. 1976) (“Government-induced flooding not proved to be inevitably

recurring occupies the category of mere consequential injury, or tort.”).

 Our conclusion is further bolstered by the foreseeability analysis employed by

both the Lea Co. and Arkansas Game & Fish Commission Courts. In Lea Co., our

 4 Cited with apparent approval in Arkansas Game & Fish Comm’n, 568 U.S. at 39, 184 L. Ed.
2d at 431.

 - 14 -
 WAGNER V. CITY OF CHARLOTTE

 Opinion of the Court

Supreme Court noted in order to establish a takings claim, the plaintiff was “required

to show that the increased overflow of water was such as was reasonably to have been

anticipated by the State to be the direct result of the structures it built and

maintained.” 308 N.C. at 614, 304 S.E.2d at 172. Specifically, the Court stated:

“Injury properly may be found to be a foreseeable direct result of government

structures when it is shown that the increased flooding causing the injury would have

been the natural result of the structures at the time their construction was

undertaken.” Id. at 617, 304 S.E.2d at 174 (emphasis omitted); see Arkansas Game

& Fish Comm’n, 568 U.S. at 39, 184 L. Ed. 2d at 431 (stating a relevant factor in the

analysis is “the degree to which the invasion is intended or is the foreseeable result

of authorized government action”).

 Here, it certainly cannot be said the City’s installation of water pipes was

intended to flood Plaintiffs’ properties. Under Lea Co., it also cannot be said the

flooding was a foreseeable direct or natural result at the time of installation of those

water pipes. See Lea Co., 308 N.C. at 614, 304 S.E.2d at 172. Moreover, the

installation of the water pipes predated the construction of the residential subdivision

where Plaintiffs’ homes were located. See id. at 617, 304 S.E.2d at 174 (“To require

the State to anticipate the shifting of business and population centers and the

attendant acts or construction by others contemporaneous with or subsequent to the

State’s construction, and to hold the State liable for a taking if it fails to do so, would

 - 15 -
 WAGNER V. CITY OF CHARLOTTE

 Opinion of the Court

place an unreasonable and unjust burden upon public funds. No such result is

required by the Constitution of the United States or the Constitution of North

Carolina”).5 Consequently, the trial court properly granted Summary Judgment to

the City on Plaintiffs’ Inverse-Condemnation claims.6

 II. Negligence

 Plaintiffs also argue the trial court erred in granting Summary Judgment for

the City on Plaintiffs’ Negligence claims. Plaintiffs advance theories that the City

was negligent in failing to properly maintain or repair the pipe so as to prevent the

leak and/or in its response to the leak once it occurred. A municipality operating a

water system “is acting in its proprietary or corporate capacity and is liable for injury

or damage resulting from such operation to the same extent and upon the same basis

as a privately owned water company would be.” Mosseller v. Asheville, 267 N.C. 104,

 5 We acknowledge Plaintiffs’ efforts to direct us to California case law they argue is analogous.
Specifically, Plaintiffs assert that rather than take a proactive approach to locating and replacing
defective pipes, the City has taken a wait-and-see approach; repairing pipes only when a problem is
discovered. Plaintiffs contend this was done as a cost-saving measure for the City and, thus, Plaintiffs
advocate, the commensurate risk should be borne by the City, which may then spread out the cost
among ratepayers. This approach was endorsed by the California Court of Appeals in Pacific Bell v.
City of San Diego, 81 Cal. App. 4th 596, 613-14, 96 Cal. Rptr. 2d. 897, 912-13 (2000), where, despite
knowing its entire water infrastructure was obsolete and in need of full replacement, the City Council
in San Diego actively chose not to raise rates and replace decrepit pipes. However, that case, in light
of its predecessors under California law, rejected the foreseeability analysis in favor of a standard
more akin to strict liability of water systems for damage caused by leaking pipes. We decline to divert
from the standard set by our Supreme Court in Midgett and Lea Co. and the decisions flowing
therefrom.
 6 Because of this result, we do not reach the City’s alternative argument that the inverse-

condemnation claim brought by Wagner and Lichstrahl should be dismissed for failure to follow the
requirements of N.C. Gen. Stat. § 40A-51.

 - 16 -
 WAGNER V. CITY OF CHARLOTTE

 Opinion of the Court

107, 147 S.E.2d 558, 561 (1966) (citations omitted). “It is not an insurer against

injury or damage by water leaking from such system.” Id. “It is liable only if the

escape of the water was due to its negligence either as to the initial break in the water

line or in its failure to repair or cut off the line so as to stop the flow.” Id. (citation

omitted).

 A. Failure to Maintain or Repair

 In Mosseller, the North Carolina Supreme Court set forth a municipality’s duty

of reasonable care in discovering and repairing breaks in its lines7:

 The reasonable care which is required of the city when engaged
 in such operation, like that required of a privately owned water
 company, includes the exercise of ordinary diligence to discover
 breaks in its lines and to correct such defects of which it has
 notice, or which it could have discovered by the exercise of
 reasonable inspection.

Id.

 Here, there is no evidence the City had prior actual notice of any defect or

problem with the water main resulting in the leak. Plaintiffs point to an

interrogatory answer by the City which reflected “[d]ating back to 2012, Defendant

is showing one repair at 3410 Carmel Road.” Plaintiffs contend this interrogatory

 7 Plaintiffs argue Mosseller was distinguished and limited by Fussell v. N.C. Farm Bureau
Mut. Ins. Co., 364 N.C. 222, 695 S.E.2d 437 (2010). We disagree that Fussell limited Mosseller; rather,
it simply highlighted the two cases presented different facts. Id. at 226-27, 695 S.E.2d at 440-41
(citation omitted). In Fussell, the Supreme Court held homeowners stated a claim for negligence for
the flooding of a home where a Town of Apex employee actively turned on water service while the
owners were not home and then failed to wait to see if it was working properly. Id. at 223, 695 S.E.2d
at 438-39. Indeed, the facts of Fussell are different than the present case, which did not involve direct
action by a City employee in starting the flow of water.

 - 17 -
 WAGNER V. CITY OF CHARLOTTE

 Opinion of the Court

answer shows the City had prior knowledge of a problem with the water main in the

vicinity of the leak at issue in this case. Additional evidence, including deposition

testimony of a City employee who pointed to the specific work order, reflected this

was a service call to locate pipes and not actually a repair. Plaintiffs point to no other

evidence that this was a repair to create any issue of fact. Moreover, taken at face

value, the interrogatory answer reflects a leak that was repaired and would not create

direct notice to the City of a subsequent leak at a different point in the lines.8 Thus,

even taking the evidence in the light most favorable to Plaintiffs, this does not create

a genuine issue of material fact supporting denial of summary judgment.

 Plaintiffs further contend the City’s disposal of the pipe constitutes spoliation

of evidence, justifying a negative inference against the City and entitling them to a

jury trial on this issue. However, “it is improper to base the grant or denial of a

motion for summary judgment on evidence of spoliation. It is not an issue to be

decided as a matter of law, and cannot, by its mere existence, be determinative of a

claim.” Sunset Beach Dev., LLC v. AMEC, Inc., 196 N.C. App. 202, 220, 675 S.E.2d

46, 58 (2009) (citation omitted). This is because “the inference does not supply the

place of evidence of material facts and does not shift the burden of proof so as to

relieve the party upon whom it rests of the necessity of establishing a prima facie

 8 Of note is that the Record also reflects evidence that the leak at issue in this case had less
impact on 3410 Carmel Road than Plaintiffs’ properties. The owner of 3410 Carmel Road reported
only some water intruding into his garage and yard.

 - 18 -
 WAGNER V. CITY OF CHARLOTTE

 Opinion of the Court

case, although it may turn the scale when the evidence is closely balanced.” McLain

v. Taco Bell Corp., 137 N.C. App. 179, 184, 527 S.E.2d 712, 716 (2000) (citation and

quotation marks omitted).

 Moreover, Plaintiffs’ own expert testified the City had no duty to inspect

underground water lines if there had been no reported issues. Plaintiffs’ expert

further testified: “I would not think that the [C]ity would have to worry about every

inch of water line . . . if they did not have a reason to expect that the water line was

ready to be broken or . . . is in poor repair[.]” Another Plaintiffs’ expert, when asked

if in his opinion there was anything the City could have done to prevent this leak,

testified in deposition: “Not this specific event, no.” Plaintiffs’ evidence thus falls

short of establishing a triable issue of fact as to whether the City exercised “ordinary

diligence to discover breaks in its lines and to correct such defects of which it has

notice, or which it could have discovered by the exercise of reasonable inspection.”

Mosseller, 267 N.C. at 107, 147 S.E.2d at 561. Consequently, the trial court properly

granted Summary Judgment for the City on Negligence claims related to failure to

inspect, repair, or maintain the pipe at issue in this case.

 B. The City’s Response

 Plaintiffs further advance the theory the City was negligent in failing to timely

respond to the water main break both by failing to have an emergency shut-off crew

on standby to respond immediately to such incidents and by failing to timely cut off

 - 19 -
 WAGNER V. CITY OF CHARLOTTE

 Opinion of the Court

the flow of water. Plaintiffs’ forecast of evidence demonstrated City Water was first

notified of a leak following a 911 call at around 6:20 a.m. At 6:24 a.m., a dispatcher

for City Water contacted team leaders regarding a potential hydrant leak. At 6:45

a.m., the team leaders instructed the dispatcher to send a crew to make repairs. No

crew was immediately available, so an on-call repair crew from Huntersville was

paged between 6:45 and 7:00 a.m. The first crewmember reported to Huntersville at

7:18 a.m. The Huntersville crew did not arrive and begin cutting off water until 8:40

a.m.

 As a result of a separate call to 311 by a neighboring homeowner at 7:16 a.m.,

a City Water Customer Service Technician also reported to the scene, arriving at 7:40

a.m. The Customer Service Technician called in an emergency requiring additional

crew between 7:45 and 8:00 a.m. with a second call being made between 8:30 and 8:35

a.m. The water was cut off and began receding from the homes sometime between

9:30 and 10:00 a.m.

 Plaintiffs introduced expert testimony that it would be reasonable to have a

repair crew on immediate standby to respond to such an incident, a reasonable

response time to arrive on scene would have been approximately 30 minutes, and

further, it should have taken only approximately 30 minutes to shut off the water

once the crews arrived on scene. Thus, it can be inferred from the evidence proffered

 - 20 -
 WAGNER V. CITY OF CHARLOTTE

 Opinion of the Court

by Plaintiffs’ expert that the City could have shut off the water by as early as

approximately 7:30 a.m.

 Plaintiffs concede even under their proffered standard, the Henke/Siravo

residence would have flooded, as Henke’s own testimony established he woke up at

6:30 a.m. to floodwaters already in the house. Thus, Summary Judgment on this

theory was appropriately granted to the City as to Henke and Siravo.

 However, the evidence reflects the Wagner/Lichstrahl residence, on the other

hand, may not have flooded until as late as between 8:15 and 8:30 a.m. To be sure,

the evidence, as the City points out, is conflicting, and the home may well have, in

fact, flooded much earlier. The City further contends the evidence reflects a

reasonable response time in shutting off the water under the circumstances.

However, this creates disputes of material facts as to when the Wagner/Lichstrahl

home actually flooded and if, in fact, the City’s response time and/or diligence in

shutting off the water was unreasonable, would swifter action have prevented

flooding of the home. Consequently, on this limited theory of negligence applicable

solely to Wagner and Lichstrahl, we conclude Summary Judgment was improper and

reverse summary judgment on this claim.

 III. Private Nuisance

 Plaintiffs argue the trial court erred in granting Summary Judgment on their

claims for Private Nuisance. “In order to establish a claim for nuisance, a plaintiff

 - 21 -
 WAGNER V. CITY OF CHARLOTTE

 Opinion of the Court

must show the existence of a substantial and unreasonable interference with the use

and enjoyment of its property.” Shadow Grp., LLC v. Heather Hills Home Owners

Ass’n, 156 N.C. App. 197, 200, 579 S.E.2d 285, 287 (2003) (citation omitted). Indeed,

Plaintiffs point to Shadow Group, LLC as supporting their position. In that case,

after a bench trial, the trial court found the homeowners’ association liable for

creating a nuisance where water from the common areas of a subdivision flowed into

townhomes within the subdivision. Efforts by the homeowners’ association to remedy

the problem only made matters worse. Id. at 198-99, 579 S.E.2d at 286. In affirming

the trial court, this Court noted “one’s action in interfering with the flow of water

resulting in damage to another’s property can constitute a private nuisance.” Id. at

200, 579 S.E.2d at 287 (citation omitted).

 The City, however, argues Shadow Group, LLC is distinguishable because it

involved recurrent or ongoing flooding—not a single incident of flooding causing a

single distinct injury to property. Rather, the City contends, Plaintiffs, if they have

any remedy here, should be limited to negligence claims. To be sure, divining the

difference between a private-nuisance and a negligence claim is not easy, and the

distinctions appear murky at best. However, this Court has indicated where “the

damage the plaintiffs complained of arose out of single physical injury, instead of an

on-going injury[,]” the action sounds in negligence and not nuisance. Walden v.

Morgan, 179 N.C. App. 673, 683, 635 S.E.2d 616, 624 (2006) (citation omitted); see

 - 22 -
 WAGNER V. CITY OF CHARLOTTE

 Opinion of the Court

Boldridge v. Construction Co., 250 N.C. 199, 203, 108 S.E.2d 215, 218 (1959) (“Indeed,

taking the evidence according to its reasonable inferences, the nuisance, if it may be

called such, was negligence-born, and must, in the legal sense, make obeisance to its

parentage.” (citation and quotation marks omitted)). Furthermore, in an analogous

case, this Court held where a municipality’s faulty sewage system resulted in an

ongoing situation where raw sewage flowed into a homeowner’s basement, this claim

did constitute a nuisance, particularly after the municipality abandoned efforts to fix

the problem. Hughes v. City of High Point, 62 N.C. App. 107, 109, 302 S.E.2d 2, 3

(1983). However, this Court also pointed out the critical distinction:

 As we understand the law, it is the maintenance of a structure or
 condition permanent in nature which constitutes a nuisance. The
 defendant would not be liable for a nuisance if it had negligently
 maintained or performed some work on a structure which caused
 some temporary inconvenience to the plaintiffs.

Id.

 In this case, Plaintiffs’ claim arises from a single incident of a burst water main

resulting in temporary damage to their properties. As such, we conclude Plaintiffs’

claims do not sound in nuisance. Thus, we affirm the trial court’s grant of Summary

Judgment to the City on Plaintiffs’ Private-Nuisance claims.

 IV. Trespass

 Plaintiffs also argue the trial court erred in granting Summary Judgment on

their Trespass claims in the 2016 Lawsuit and, in turn, dismissing their separate

 - 23 -
 WAGNER V. CITY OF CHARLOTTE

 Opinion of the Court

2017 Complaint. “In order to establish a trespass to real property, a plaintiff must

show: (1) his possession of the property at the time the trespass was committed; (2)

an unauthorized entry by the defendant; and (3) resulting damage to the plaintiff.”

Shadow Group, LLC, 156 N.C. App. at 201, 579 S.E.2d at 287 (citation omitted).

Specifically, “[o]ne’s action of causing water to flow onto another’s property can

constitute such a trespass.” Id. (citation omitted). However,

 [e]xcept where the actor is engaged in an abnormally dangerous
 activity, an unintentional and non-negligent entry on land in
 possession of another, or causing a thing or third person to enter
 the land, does not subject the actor to liability to the possessor,
 even though the entry causes harm to the possessor or to a thing
 or third person in whose security the possessor has a legally
 protected interest.

Smith v. VonCannon, 283 N.C. 656, 661, 197 S.E.2d 524, 528 (1973) (citations and

quotation marks omitted).

 Here, there is no contention the City committed an intentional trespass.

Rather, Plaintiffs rely on their claims for Negligence. As we have already concluded

Summary Judgment was proper for the City as to Henke and Siravo on both theories

of Negligence, we affirm Summary Judgment as to them on their Trespass claims in

the 2016 Lawsuit and dismissal of the same claim in the 2017 Lawsuit. Likewise, we

affirm Summary Judgment to the City as to Wagner and Lichstrahl on the theory the

City negligently maintained the water main. However, we reverse Summary

Judgment as to Wagner and Lichstrahl on the theory the City was negligent in their

 - 24 -
 WAGNER V. CITY OF CHARLOTTE

 Opinion of the Court

response to the water main burst resulting in flooding of their property in the 2016

Lawsuit and reverse dismissal of the 2017 Lawsuit on this limited theory.

 V. Constitutional Claims

 Finally, Plaintiffs argue the trial court erred in granting Summary Judgment

to the City on Plaintiffs’ claims arising from alleged violations of their State

constitutional protections affording the right to due process and equal protection

when the City denied their claims for compensation arising from the flooding.

Specifically, Plaintiffs contend the forecast of evidence reveals they were afforded

different treatment than other similarly situated residents who submitted claims to

the City for flood damage solely because Plaintiffs had property casualty insurance,

and this constituted the basis for the City’s denial. While it is true the City denied

their claims and the evidence reflects Plaintiffs did have such insurance, we see no

evidence in the Record to support any correlation between these two facts. To the

contrary, our review of the evidence reflects the City applied the same process to

Plaintiffs’ claims as it did to others identified in the Record. Thus, the trial court

properly granted Summary Judgment on Plaintiffs’ remaining constitutional claims.

 VI. Other Motions

 In light of our decision resulting in reversal, in limited part, of the trial court’s

grant of Summary Judgment to the City, we also vacate the trial court’s dismissal of

 - 25 -
 WAGNER V. CITY OF CHARLOTTE

 Opinion of the Court

the remaining Motions as moot. On remand, the trial court, with the assistance of

the parties, should determine which of those Motions now require a decision.

 Conclusion

 Consequently, for the foregoing reasons, we affirm Summary Judgment for the

City on Plaintiffs’ Inverse-Condemnation claims, Nuisance claims, and remaining

constitutional claims. We affirm Summary Judgment for the City on the Negligence

claims by Henke and Siravo. We affirm Summary Judgment for the City on the

Negligence claim of Wagner and Lichstrahl on the theory of negligent maintenance

of the water main but reverse Summary Judgment on the theory of the City’s alleged

negligent response to the water main break. Likewise, we affirm Summary

Judgment in the 2016 Lawsuit and dismissal of the 2017 Lawsuit as to the Trespass

claims brought by Henke and Siravo and reverse Summary Judgment in the 2016

Lawsuit and dismissal of the 2017 Lawsuit on the Trespass claims of Wagner and

Lichstrahl based on the theory of the City’s alleged negligence in responding to the

water main break. Accordingly, we also vacate the trial court’s dismissal of the

remaining Motions as moot and remand this matter to the trial court to proceed on

those Motions as necessary and to proceed with the remaining claims of Wagner and

Lichstrahl.

 AFFIRMED IN PART, REVERSED IN PART, VACATED IN PART, AND

 REMANDED.

 - 26 -
 WAGNER V. CITY OF CHARLOTTE

 Opinion of the Court

 Judge DILLON concurs.

 Judge MURPHY concurs in part and in result only in part in a separate

 opinion.

No. COA 18-1084 – Wagner, et al., v. City of Charlotte

 MURPHY, Judge, concurring in part and concurring in result only in part.

 I fully join the Majority as to Parts II, III, and IV of its Analysis. However, I

concur in the result only as to Part I. Although I join in the bulk of the Majority’s

Part I analysis, I must throw cold water on the portion that attempts to harmonize

our Supreme Court’s opinion in Lea Co. with the United States Supreme Court’s

opinion in Ark. Game & Fish Comm’n. The U.S. Supreme Court considered more

factors in Ark. Game & Fish Comm’n than our Supreme Court did in Lea Co.9 The

 9 The U.S. Supreme Court outlined at least five considerations:

 [(1)] When regulation or temporary physical invasion by government
 interferes with private property, our decisions recognize, time is indeed
 a factor in determining the existence vel non of a compensable taking.

 [(2)] Also relevant to the takings inquiry is the degree to which the
 invasion is intended or is the foreseeable result of authorized
 government action.

 [(3)] So, too, [is] the character of the land at issue. . . .

 - 27 -
 WAGNER V. CITY OF CHARLOTTE

 MURPHY, J., concurring in part and concurring in result only in part.

Majority focuses on only one factor in its attempt to synthesize Lea Co. and disregards

the United States Supreme Court’s holding:

 We rule today, simply and only, that government-induced
 flooding temporary in duration gains no automatic
 exemption from Takings Clause Inspection. When
 regulation or temporary physical invasion by government
 interferes with private property, our decisions recognize,
 time is indeed a factor in determining the existence vel non
 of a compensable taking.

Ark. Game & Fish Comm’n, 568 U.S. at 38, 184 L. Ed. 2d at 430-31 (emphasis added).

 By contrast, and as the Majority outlines, Lea Co. only considered two

elements. The first was “the substantiality of the injury.” Lea Co. v. N.C. Bd. of

Transp., 308 N.C. 603, 619, 304 S.E.2d 164, 175 (1983). The second was “whether it

had been shown that substantial injury had been caused as the foreseeable direct

result of the structure built and maintained by the government.” Lea Co., 308 N.C.

at 620, 304 S.E.2d at 176. This two-part analysis is, at best, a watered-down version

of Ark. Game & Fish Comm’n.

 The Ark. Game & Fish Comm’n factors must be calculated together with Lea

Co.’s elements. I would find the Ark. Game & Fish Comm’n factors were also required

to be “figure[d] in the calculus.” Ark. Game & Fish Comm’n, 568 U.S. at 39, 184 L.

 [(4) A]nd the owner’s reasonable investment-backed expectations
 regarding the land’s use.

 [(5) The s]everity of the interference figures in the calculus as well.

Ark. Game & Fish Comm’n v. United States, 568 U.S. 23, 38-39, 184 L. Ed. 2d 417, 430-31 (2012)
(emphasis added and internal marks and citations omitted).

 - 28 -
 WAGNER V. CITY OF CHARLOTTE

 MURPHY, J., concurring in part and concurring in result only in part.

Ed. 2d at 431. When “assessed by case-specific factual inquiry,” id. at 38, 184 L. Ed.

2d at 431 (citing Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419, 435,

n. 12, 73 L. Ed. 2d 868, 895 (1982)), that analysis would result in finding an inverse

condemnation here.

 Despite this, the procedural posture of this case requires my concurrence and

does not present an opportunity to dissent on an issue of which I have great passion.

If we were considering whether or not there was a taking under the United States

Constitution, then I would provide a full dissent and discuss why, in the light most

favorable to Plaintiffs, the claims for inverse condemnation survive at this stage of

the litigation. However, on 29 December 2016, while this matter was before the

United States District Court for the Western District of North Carolina, Plaintiffs

filed their Memorandum of Law in Support of Motion to Remand informing the

District Court that

 Plaintiffs’ Proposed Amended Complaint contains no
 federal claims and no federal questions. The [District]
 Court should decline to exercise supplemental jurisdiction
 over the state law claims. Remanding this case to state
 court promotes the values of economy, convenience,
 fairness and comity.

 Defendant subsequently agreed with Plaintiffs and consented to the Proposed

Amended Complaint and the remand to state court in a filing dated 12 January 2017.

On 27 February 2017, the federal court accepted the positions of the parties and

 - 29 -
 WAGNER V. CITY OF CHARLOTTE

 MURPHY, J., concurring in part and concurring in result only in part.

ordered this matter remanded to state court as the Amended Complaint “eliminat[ed]

Plaintiffs’ federal claims.”

 The U.S. Supreme Court’s opinion in Ark. Game & Fish Comm’n dealt with a

violation of the Takings Clause under the United States Constitution. Therefore, the

framework set out therein only applies to takings under the Fifth Amendment as

applied to North Carolina through the Fourteenth Amendment. Plaintiffs openly

abandoned any claim thereunder when it sought to have this matter remanded to

state court. Lea Co. cannot be harmonized with Ark. Game & Fish Comm’n in the

way the Majority attempts, and properly applying the Ark. Game & Fish Comm’n

factors in this case would lead to the opposite result.

 However, as we are only applying North Carolina’s analysis of a taking without

reference to the United States Constitution, we are bound by Lea Co. as our high

court’s controlling consideration of what does and does not constitute a taking in

these circumstances. Even so, I cannot agree with the Majority that “Arkansas Game

& Fish Commission is generally consistent with the analysis historically employed

by our state courts[,]” that its “analysis is in harmony with our Supreme Court’s

decision in Lea Co.[,]” that Lea Co. “largely foreshadowed Arkansas Game & Fish

Commission[,]” or that Ark. Game & Fish Comm’n would “not alter our course here.”

Therefore, based upon the unique procedural history in this Record, I concur in the

result only as to the claims for inverse condemnation.

 - 30 -
 WAGNER V. CITY OF CHARLOTTE

MURPHY, J., concurring in part and concurring in result only in part.

 - 31 -